## ST. LOUIS UNION TRUST CO. v. JOLLIFFE.
### No. 125.

Circuit Court of Appeals, Second Circuit.
Dec. 10, 1934.

John E. Donnelly, of New York City, for appellant.

David W. Peck, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The trustee in bankruptcy appeals from an order of the judge affirming an order of the referee, which over the trustee's objection allowed in full a claim against two bankrupt corporations, one of Illinois, the other of Delaware, a holding company. The facts are as follows: In July, 1927, one, Hills, borrowed $500,000 from the First National Company

of St. Louis, for which he executed a series of bonds and as security a mortgage upon a warehouse in Chicago of which he held the fee. The lender insisted that the warehouse should be put upon a presently paying basis and for this reason Hills let it to the Illinois company for a term of years at a monthly rental of $5,000, the lease being subject to the mortgage. As part of the same transaction, Hills then assigned the lease to the trustee of the mortgage, the assignment reciting that Hills was to collect the rents so long as he did not default in his payment of the bonds, and that if he did, the mortgagee might "enter upon and take possession of said premises under said lease, and exercise all the rights herein conferred upon it, and * * * collect all rents and revenues under said lease, pay all expenses of the operation and management of the property out of such revenues, and shall apply the net rentals thus obtained from said property to the payment of the indebtedness." The Delaware corporation guaranteed performance of the lease by the Illinois company. In June, 1929, Hills conveyed his equity of redemption in the warehouse to the Illinois company, and continued making the prescribed payments on the bonds until July 15, 1932, when he defaulted as to $7,500 of an instalment of $25,000 due that day. There was then unpaid $382,500 of the principal; and the property had been appraised at $847,000 in 1927. On August 5, 1933, the default having continued for over a year, the trustee under the mortgage accelerated the principal of the bonds, and a petition in bankruptcy was filed against both companies on August twenty-fourth following. The claim is for the thirteen months' unpaid rent which accrued after Hills' default and before petition filed, together with the unpaid taxes for the years 1930–1931, a total of about $96,000. The trustee in bankruptcy contends that after Hills' conveyance of the equity of redemption to the Illinois company in 1929, the warehouse was a security not only for the claim against Hills, but for the rents to which the claimant became entitled after Hills' default; and that for this reason its value must be deducted from Hills' debt, under section 57h, Bankr. Act (11 USCA § 93(h), and the claim proved against both companies only for the balance.

Had Hills merely conveyed the reversion to the Illinois company, there being no mortgage of the fee and no assignment of the reversion, the term would have merged with the fee and the rents would have ceased. Carroll v. Ballance, 26 Ill. 9, 79 Am. Dec. 354. The mortgage and assignment prevented this, being interposed between the term and the equity of redemption. However, both were only security for the debt, and would disappear as soon as it was paid, in which case the term and the fee would merge as though they had never been interposed; this indeed quite independently of the provision in the assignment which expressly revested Hills with the reversion as soon as the debt was paid. But we are not concerned with a putative payment of the debt by Hills, for the result in that event will not determine whether the property was security for the rents, the only material inquiry. We must find out whether the payment of the debt by the sale of the warehouse would discharge past instalments of rent. We need not say what would have been the situation if the mortgage had been subject to the term; it was not, the term was subject to the mortgage. This meant that any purchaser on foreclosure would take free of the term which would thereupon end except perhaps at his option. With it would also end all future rents; but the past rents being debts would remain due, and since the mortgagee could collect them only in so far as he was unpaid by the proceeds of the sale, any balance would revert to Hills. Hills could not however hold any part of the rents after his conveyance of the equity to the Illinois company. The presumption of intent which would have applied, had there been no intervening interests, would apply after those interests were swept away and the debt with it; the intent which would have merged the term would have merged the rent qua Hills. The rents were therefore secured by the property, because the proceeds of its sale discharged them pro tanto. That is the meaning of security and it is of no moment that the creditor may ignore it and sue the debtor. That circumstance has generally in the past resulted in allowing full proof of secured claims, but section 57h, 11 USCA § 93(h) more equitably insists upon a set-off. Therefore, all the conditions of section 1 (23) and section 57 h (11 USCA § 1(23) and § 93(h) were fulfilled. A question might arise as to whether the property should be marshalled first against the debt, and then against the past rents, but the trustee does not raise it and we assume that he is content to have the claim proved up to $96,000 for whatever part of the debt is left uncovered by the value of the warehouse. We need not now consider the proper way to liquidate the value of the security; estimates of the value of realty in the larger cities are at present especially unreliable; it might be fair to make a liberal discount from the appraisals of experts if

that method be adopted. We leave this issue to the referee's discretion.

■■ Another question is whether the mortgagee was entitled to the rents until demand and entry either personally or by a receiver. When a mortgage is accompanied by an assignment of future rents, the rule is that the mortgagor keeps the usufruct until the mortgagee moves to take possession. We may assume that this would have been the case here had not Hills assigned the reversion. By that however the mortgagee became lessor in his place and might have collected as such, except that the assignment reserved the rents to Hills until he should default, and was therefore conditional. When, however, the condition was fulfilled, the assignment became as absolute as though made at that moment. It is quite true that the only language giving the mortgagee any right to the rents upon Hills' default is that which we quoted at the outset; but that language was not necessary, the claimant was lessor with a lessor's remedies. All the phrase accomplished was to give it an added power, if it chose, to enter and relet, which would have ended the term. It did not so choose; it has been content to rely upon the obligation of the bankrupt to pay the rents; and the phrase for the purposes of this case is brutum fulmen. Certainly it did not mean to toll any remedies which the lessor had without it.

■ Finally, as to the proof against the Delaware company as guarantor of the Illinois company's payment of the rents. The security of the principal debtor does not inure to the advantage of a guarantor under section 57h, 11 USCA § 93(h). Gorman v. Wright, 136 F. 164 (C. C. A. 4); Board of Com'rs of Shawnee County v. Hurley, 169 F. 92 (C. C. A. 8); In re New York Commercial Co., 233 F. 906 (C. C. A. 2). And indeed this necessarily follows from the language of section 1 (23), 11 USCA § 1(23), which is controlling. The Delaware company held no property of the Illinois company as security; nor was it an indemnitor whose liability was measured by the amount that the Illinois company, the principal, would in the end be out of pocket. Perhaps the result is not just, since the guarantor, if it paid, would have been subrogated to the mortgagee's rights in the security; and in this direct way that security was its own. But the language of section 1 (23), 11 USCA § 1 (23), is too express to be disregarded and the claim must be allowed without deduction.

Order affirmed as to the Delaware company; order reversed as to the Illinois company, and cause remanded to the referee with instructions to value the security in any way allowed by the statute, and to allow the claim for so much of its face as remains after deducting the amount so found from the face of Hills' debt.