## PRUDENCE REALIZATION CORP. v. PRUDENCE–BONDS CORP. et al.

### No. 198, Docket 21929.

United States Court of Appeals
Second Circuit.

Argued March 6, 1951.

Decided April 23, 1951.
Additional Opinion May 28, 1951.

Irving L. Schanzer, New York City, for appellant.

Charles M. McCarty, New York City, for Prudence-Bonds Corp. (New Corporation) et al.

Samuel Silbiger, Brooklyn, N. Y., for George E. Eddy, appellee.

Geo. C. Wildermuth, Brooklyn, N. Y., for trustee of debtor.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

L. HAND, Chief Judge.

Prudence Realization Corporation, the successor of Prudence Company, appeals from two orders made in the reorganization under § 77B, 11 U.S.C.A. § 207, of Prudence-Bonds Corporation, which denied two petitions praying a modification of two earlier orders in the same proceeding. The purpose of the petitions is to recover payments, made by the petitioner or its predecessor, Prudence Company, as guarantor of two out of the eighteen series of bonds, issued by Prudence-Bonds Corporation. The reorganizations have repeatedly been before this court, and it will be necessary to state only so much of the facts as are relevant to this controversy, which is the outcome of the large recoveries from the mortgage trustees of the two series because of their misfeasances. These recoveries, together with the mortgages which secured the series, were enough to leave a surplus after paying all the bonds of the series, principal and interest, including both those held by the public—the "Publicly Owned Bonds"—and others taken up by petitioner and its predecessor—the "Subordinated Bonds." The orders, which the petitions seek to modify, awarded to the "Publicly Owned Bonds" this surplus, out of which the petitioner seeks repayment of the dividends which, as guarantor, it had paid to the bondholders. The "New Corporation" answers that the Prudence Company released all its rights as guarantor by a settlement made during the reorganization; that the petitioner has in any event no standing as surrogate; and that any change in the orders in question would "adversely modify" the plans of reorganization of both Prudence-Bonds Corporation and Prudence Company.

The two series involved are the Ninth and Twelfth; but, as the facts are the same as to each, we shall confine our discussion to the Ninth. During the reorganization of Prudence-Bonds Corporation the Superintendent of Banks of New York, who had sequestered the assets of Prudence Company, filed in the reorganization proceeding six proofs of claim on behalf of that company; and in December

1937, after Prudence Company had itself gone into reorganization under § 77B, its trustees and those of Prudence-Bonds Corporation arrived at a settlement of these claims which the court approved. Among the claims released were those which might arise from any payments that the Prudence Company had made as guarantor, or that it might make in the future. In consideration of the release Prudence Company was paid $150,000 and received $154,456.64 face value of unissued "participation certificates" of Prudence-Bonds Corporation, on which over $100,000 has been realized. The plan of reorganization of Prudence-Bonds Corporation was thereafter approved with the consent of Prudence Company, and the "New Corporation" was organized to carry it out. (The plan released Prudence-Bonds Corporation from all liability under the bonds, but the "New Corporation" assumed the liability in its place.) In implementation of the settlement the trustees of Prudence Company executed a general release of all its claims present and future, including "all * * * claims * * * against * * * the said Prudence-Bonds Corporation * * * by any terms or provisions of the bonds." The petitioner asserts that the settlement and release did not discharge Prudence-Bonds Corporation, or the "New Corporation," from its claim in subrogation as a guarantor, arising out of its payments on the principal and interest of the bonds. It alleges, first, that this follows from a proper interpretation of the text; and, second, that equity would in any event bring about the same result.

In spite of the confusing verbiage of the release, when it is read with the settlement, the intent is plain to discharge Prudence-Bonds Corporation of all claims which Prudence Company had or might have against it, as guarantor; for in the settlement Prudence Company consented to "withdraw and consent to the expunging of all of the following proofs of claim * * * and will release any

and all of our rights * * * with respect thereto against said Prudence-Bonds Corporation." Then followed a description of the six claims which the Superintendent of Banks had filed in the reorganization, and of which Number I (a) was a claim for "Guarantees * * * of Prudence bonds and Prudence certificates," and Number V (b) and Number V (c) were for "sums paid by Prudence Company, Inc., under its guarantees * * * and (c) all other rights arising upon said guarantees." We cannot understand how anyone can doubt that the claims were meant to assert all Prudence Company's claims as guarantor, existing or future; and the settlement was coextensive with the claims. The petitioner seeks to avoid this conclusion by invoking the concluding clause: "Nothing herein contained * * is in any way to affect, vary, impair, or increase the rights of bondholders * * * with respect to the guarantee thereof." Its argument is that, if the release be construed to discharge the Guarantor's claim to so much of the surplus as its past dividends created, and if this goes as a windfall to the "Publicly Held Bonds," the release will "increase the rights of bondholders * * * with respect to the guarantee." Since the guarantor in subrogation speaks in the right of the creditor against the principal, it is of course true that, if Prudence Company had paid the bonds in full, it would have been entitled to the collateral which secured them, for a surety is subrogated "to the interests which the creditor has in security for the principal's performance."[1] Moreover it would not have been an objection that the dividends did not pay the bonds in full; because, although a surety may not sue until the creditor has been paid in full, when the creditor has been paid, the surety may recover any part that he has contributed.[2] Finally, the recovery against the malfeasant trustee was part of the security: indeed, that was the basis of its recovery in the bankruptcy court and as an inci-

---

1. Restatement of Security, § 141(b).

2. Restatement of Restitution, § 162, Comment c, Illustration 2.

dent of bankruptcy.[3] Hence when the security became large enough to pay in full the creditors—the "Publicly Owned Bonds" —*prima facie* Prudence Company and its successor the petitioner had a claim against the principal—Prudence-Bonds Corporation—and against the security for any payments it had made.

We agree therefore that the question resolves itself into whether the concluding clause excluded from the release the rights of Prudence Company, as guarantor. The general purpose of the clause was to leave no doubt that the settlement should not affect bondholders' rights. True, no agreement between principal and surety can affect the creditor's rights against either; but this settlement was part of a reorganization under § 77B, in which the court could modify the rights even of secured creditors, and it may perhaps have been thought appropriate expressly to provide against any such possibility. In that view, it may be doubted whether the interpolation of the word, "increase," was anything more than a scrivener's exuberance. We shall not so assume, however; on the contrary we shall assume that it was deliberate, and so we may do, because, whatever its object, it cannot have meant to protect the right of Prudence Company, as guarantor. In the first place, since two of the claims filed by the Superintendent expressly covered all its payments, as guarantor, past and future, the clause so construed would defeat one of the main objects of the settlement. Moreover, the release could not conceivably be thought to "increase" the bondholders' rights, either against the principal or the guarantor. It is true that it will have the effect of relieving the bondholders from what might otherwise have been a claim against the security; but that is only because they have been awarded more than their principal and interest. The guarantor had no possible claim against them, or indeed against the security until they had been paid in full; it was they who had a claim against it. The record does not disclose why the bondholders were awarded the windfall; but, whatever its source, the award could not have been any part of their "rights * * * with respect to the guarantee": for that did not insure them more than principal and interest.

Nor can we see that the principles of equity put the petitioner in any stronger position than does the text. At most it can claim no more than that the situation called for a reformation of the settlement; and that may well have been true, had the petitioner demanded that relief. In 1938 nobody suspected that there would be any surplus; the malfeasance of several of the trustees of the series had not been discovered; and, if it had been, the inevitable difficulties in the path of any recovery would have seemed formidable, if not prohibitive. A compromise may be set aside, if the parties are acting under a mutual mistake as to the value of the right surrendered, and this mistake concerned the existence of facts which determined the value.[4] Although therefore the petitioner may have had a good cause of action for reformation, it could have invoked that remedy only by rescinding the compromise as a whole; which involved offering to return the consideration.[5]

For the foregoing reasons we hold that by the settlement and release Prudence Company discharged any claim that it had as guarantor against Prudence-Bonds Corporation. It need not indeed follow that the petitioner has no interest in the disposition of the surplus collateral; and this may even extend to more than so much of it as was created by the dividend paid upon the bonds; it may go to the whole of the surplus. The "Supplemental Trust Agreements," which superseded the original trust deeds, all provided that any

---

3. Central Hanover Bank & Trust Co. v. President and Directors of the Manhattan Co., 2 Cir., 105 F.2d 130.

4. Williston on Contracts, § 1543; Corbin on Contracts, § 605.

5. Restatement of Contracts, §§ 510, 480 (1).

surplus in the collateral of one series should be added to the collateral of any other series which was insufficient to pay in full the bonds of that series. That in effect made a pool of all the surpluses for the benefit of those series which were not paid in full. The bondholders of all the series filed contingent claims against Prudence Company in its reorganization, and presumably the petitioner has assumed the liability, just as the "New Corporation" assumed that of Prudence-Bonds Corporation. Thus, since § 57, sub. h, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. h, allows claims to be proved against a surety for only the difference between the face of the claim and the value of any security which the creditor holds for the debt, it may well be that the petitioner, which now holds the position of a surety in bankruptcy, is entitled to credit the surpluses in reduction of the claims of any bonds filed against it as substituted guarantor. That right would, however, be forfeited, if the orders on appeal were allowed to stand, because they direct the "New Corporation" to pay the surpluses here in suit to the bondholders of the Ninth and Twelfth Series. It would be anomalous, at once to allow the petitioner to credit the surpluses upon the claims against it and to deny the bondholders their share of the security. Upon this record we cannot finally dispose of this question; the court may have had grounds which do not appear for directing the surpluses to be so paid. For example, the deficiency bondholders may have lost their interest by conduct or orders that we do not know; but on this record as it stands the orders were wrong so far as they did so award the surpluses. We said nothing in Eddy v. Prudence-Bonds Corporation, 2 Cir., 165 F.2d 157 to authorize such an obviously unjust distribution of the estate.

Orders reversed and cause remanded for further proceedings in accordance with the foregoing.

CLARK, Circuit Judge (dissenting in part).

Under settled and obvious principles of law and justice a creditor, collecting first from the debtor's guarantor and next from his collateral, must then reimburse that guarantor. These principles are not directly questioned here, but I think they can properly be given more scope as a basis for attack upon the necessary confusions of the case. Saying first that they should govern unless clearly eliminated by some means, presumably contract, I would add that the labored argument necessary even to raise the doubt, leaving two courts working at cross-purposes as to the ultimate disposition of an obvious windfall, is far from a demonstration of such clear elimination. Hence I would conclude that they should continue to operate to require a judgment in appellant's favor. That is all I perhaps need to say. I shall, however, append a few sentences of clarification.

The opinion herewith relies on two grounds for denying this relief to appellant: the release by Prudence Company; and provision for the use of this fund to pay up other bonds not yet paid in full. As to the first, the opinion itself discloses the ambiguities of the release. Surely the possibility of reimbursement would seem in prospect more a claim against overpaid creditors than one against the original debtor; hence the provisions for the debtor's release are not out of place in the context of the parties' intent and do not show—certainly beyond peradventure —that such a claim was thus so haphazardly yielded. When to that is added the express provision, as if to avoid even the thought, that this release shall not vary the bondholders' (creditors') rights and specifically shall not *increase* them in the very way the order below proceeded to do, the inadequacy of the first ground seems to me clear. As to the second, that was not thought of below and is opposed here by appellee New Corporation; it appears to be suggested only, and somewhat tentatively, by the bondholder Eddy. It seems to depend entirely on the language in the Supplemental Trust Agreements providing in effect that any surplus in the collateral

936

of one series shall be added to the collateral of any other series where insufficient. To me the idea that the promise of this guarantor—given *in addition to* the specific collateral which has enabled the payment of these bonds in full—was ever thought of as "collateral" and specifically as collateral for all the other series is so improbable in both the specific and the general contexts that I must reject this ground also.

Disagreement of my brothers with the order below leaves the ultimate disposition of the fund somewhat clouded, though the general thought is that it must go to unpaid, rather than fully paid, bondholders. I, too, prefer that, but, in view of the doubts now manifest, should think it more nearly correct to return the money to the successor of the guarantor, who had to advance it in the first place. I would reverse for that purpose.

#### On Petition for Modification

L. HAND, Chief Judge.

█ Although the error would not have affected the result on this appeal, we wish to correct what we said in our opinion about § 57, sub. h, of the Bankruptcy Act. The doctrine that a secured creditor may prove in bankruptcy only for the difference between the face of his claim, and what he has realized upon his security, does not apply unless the security is "property" of the bankrupt; * and therefore does not apply to a situation in which a creditor, who is secured not only by property of his principal debtor, but by the promise of a surety, proves against the bankrupt estate of that surety.

We assumed in our opinion that there would be a surplus of the sum, as yet undistributed, which has resulted from the liquidation of the securities in the Ninth Series. There will be no such surplus; indeed there will be a deficiency, if there is charged against that undistributed sum the whole principal and interest of the "Publicly Held Bonds," the whole principal and interest of the "Subordinated Bonds" held by the Prudence Realization Corporation, and the lien of the Manhattan Bank. The proper distribution of the undistributed sum is not before us on this appeal, and we leave it for the consideration of the district court. The order will be reversed, as we have held before, and Prudence Realization Corporation will be permitted to assert any claims to the undistributed sum which it may desire, except of course that it may not assert any claims, as surrogate of the bondholders to whom it has paid any dividends as guarantor. In no other respects will our opinion be changed.

CLARK, Circuit Judge.

I do not object to this modification, while still standing upon my original dissent in part.

---

* Ivanhoe Building & Loan Ass'n v. Orr, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419; St. Louis Trust Union Co. v. Jolliffe, 2 Cir., 74 F.2d 247.