**In the Matter of Philander P. CLAXTON, III, Alleged Bankrupt.**

**Bankruptcy No. 79–684–A.**

United States Bankruptcy Court, E. D. Virginia, Alexandria Division.

July 26, 1982.

---

Richard J. Stahl, Annandale, Va., for debtor.

Richard A. Bartl, Alexandria, Va., Trustee in Bankruptcy.

Robert O. Tyler, Alexandria, Va., for Richard A. Bartl, Esquire.

Ronald L. Walutes, Annandale, Va., Trustee in Bankruptcy for Watkins Corp.

John S. Stump, James M. Lewis, Edward P. Rodriguez, Jr., Boothe, Prichard & Dudley, Fairfax, Va., for Ronald L. Walutes, Esquire.

Gerald M. O'Donnell, Alexandria, Va., for Humford Equities, Inc.

R. K. Richardson, Fairfax, Va., for Equico Lessors, Inc.

Larry Suiters, Arlington, Va., for International House of Pancakes.

David J. Frantz, Alexandria, Va., and Karl W. Pilger, Falls Church, Va., for Emerald Electronics Corp. assignee of Edward P. Morgan; of City National Bank of Austin; and of BASF Wyandotte Corp.

Harold Costalas, pro se.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

The debtor, Philander P. Claxton, III, ("Claxton") was adjudicated a bankrupt March 21, 1980 by this Court. Thereafter, Claxton filed a Motion to Vacate the Adjudication of Bankruptcy under Rule 924 of the Rules of Bankruptcy Procedure and Rule 60(b) of the Federal Rules of Civil Procedure. This Court, without vacating the adjudication of bankruptcy, granted Claxton a new hearing limited to the issue of whether the creditors who filed and joined in the Creditors' Petition seeking Claxton's involuntary bankruptcy met the requirements of Section 59b of the Bankruptcy Act of 1898. 11 U.S.C. § 95(b).

Claxton argues that an insufficient number of the creditors listed in the Petition qualified under the requirements of Section 59b for the filing and sustaining of an involuntary bankruptcy petition. Claxton further contends that seven of the ten petitioning creditors, or their assignees, should be allowed to withdraw.

Ronald L. Walutes, Trustee in Bankruptcy for Watkins Corporation ("Watkins"), filed a Creditors' Petition seeking Claxton's adjudication as a bankrupt on June 26, 1979. Watkins was joined initially in the petition by Humford Equities, Inc. ("Humford") and Equico Lessors, Inc. ("Equico"). Later, the International House of Pancakes ("IHOP"), Edward P. Morgan ("Morgan"), City National Bank of Austin ("City National"), BASF Wyandotte Corporation ("BASF"), First and Merchants National Bank ("F&M"), Small Business Administration ("SBA") and Harold Costalas ("Costalas") joined the Creditors' Petition, the latter five having been permitted to join over Claxton's objection.

Of these ten creditors, two (Watkins and F&M) claim to be direct creditors of Claxton. Six creditors (Humford, Equico, IHOP, Morgan, City National and Costalas) claim Claxton is indebted to them because he personally guaranteed obligations of the Watkins Corporation. Two creditors (SBA and BASF) assert claims based on Claxton's personal guarantees of debts of Austin Molding, Inc. Subsequently, seven creditors or their assignees filed Motions to withdraw their joinders.[1]

Claxton contends that seven of the ten petitioning creditors held security for their claims, specifically: Humford, Equico, IHOP, Morgan, City National, SBA and Costalas. The thrust of Claxton's position is that without evidence of the value of the alleged security it is impossible to determine whether the claims exceed the value of the alleged security by $500.00, as required by Section 59b. Absent such evidence, Claxton contends, any creditor with security must be disqualified as failing to come within the definition of a creditor for purposes of sustaining a petition to commence an involuntary case under Section 59b of the Bankruptcy Act. *See* 11 U.S.C. § 95(b). Although the Act does not define "security" or "securities" (as used in this context), a "secured creditor" is defined in § 1(28). Section 1(28) of the Act reads:

> "Secured creditor" shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this Act or who owns such a debt for which some endorser, surety, or other person secondarily liable for the bankrupt has such security upon the bankrupt's assets.

11 U.S.C. § 1(28).

■ Thus, it is clear that the bankruptcy definition of secured creditor is a narrow one. *R. I. D. C. Industrial Development Fund v. Snyder*, 539 F.2d 487 (5th Cir. 1976) *cert. denied* 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977). To be "secured" under the Bankruptcy Act, one must "either hold security against the property of the bankrupt, or be secured by the individual obligation of another who holds such security." *Gorman v. Wright*, 136 F. 164, 165 (4th Cir. 1905). A secured creditor under the Act is one with a lien on property of the debtor. If the lien is on property of another, the creditor is deemed unsecured within the meaning of the Act, and may recover the full amount of his claim. *Ivanhoe Building & Loan Association v. Orr*, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419 (1935).

■ Courts have observed that a creditor can be amply secured as a practical matter, and yet not be a secured creditor under Section 1(28). *In re Butz*, 1 B.R. 435, 436 (Bkrtcy.E.D.Pa.1979). *See also, R. I. D. C. Industrial Development Fund v. Snyder, supra,* (creditor secured under Article 9 of the U.C.C. but unsecured under Bankruptcy Act). Claxton concedes that, under Section 1(28), the trustee is correct in asserting that one must have a lien on property of the debtor to be secured. He advocates the application of a broader definition so that a "creditor" holding "any securities" under Section 59b would not be restricted to a person who met the strict requirements of Section 1(28). The two cases which Claxton cites to support this argument[2], however, do not address the question of whether the narrow definition of secured creditor contained in Section 1(28) applies to Section 59b. On the contrary, the case law is quite clear that a creditor is not secured under the Bankruptcy Act if his security consists of the unsecured guarantee of the bankrupt for the obligations of another. *In re United Cigar Stores Co. of America*, 73 F.2d 296 (2nd Cir. 1934), *cert. denied sub nom, Irving Trust Co. v. Bankers Trust Co.*, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935). *Accord, St. Louis Union Trust Co. v. Jolliffe*, 74 F.2d 247 (2d Cir. 1934); *Gorman v. Wright*, 136 F. 164 (4th Cir. 1905). It is

---

1. They were: Humford, Equico, Morgan, City National, BASF, F&M and Costalas.

2. *In re Mann*, 117 F.Supp. 511 (D.Md.1952); *In re Gibraltor Amusements, Ltd.*, 187 F.Supp. 931 (E.D.N.Y.1960), *affirmed*, 291 F.2d 22 (2d Cir. 1961), *cert. denied* 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961).

further well settled that any security the creditor may hold against the principal obligor on the debt does not inure to the benefit of a bankrupt guarantor. *St. Louis Union Trust Co. v. Jolliffe, supra* (standard for determining unsecured portion of claim for purpose of participation in liquidation dividend). In *United Cigar Stores, supra,* the Second Circuit held:

> When a creditor holds security belonging to a principal obligor and also the guaranty or secondary liability of a bankrupt as surety, the creditor is not a secured creditor of such bankrupt, and may prove his claim for the full amount owing such creditor.

73 F.2d at 297.

Claxton claims that seven of the petitioning creditors hold securities within the meaning of Section 59b by virtue of the various collateral and default remedies they hold against the principal obligors of the debts guaranteed by Claxton. The case law is clearly to the contrary. Even if Claxton were correct in his assertion that some of the petitioners held some security for their claims, since none of that security created an enforceable lien on the property of Claxton[3], none of the petitioners held "any securities" within the meaning of the Act.

■ Therefore, Claxton's personal guarantees of the obligations of Watkins and Austin Molding, Inc. did not make the beneficiaries of those guarantees secured creditors of Claxton[4]. Similarly, any contractual rights or remedies the creditors may have had against the principal obligors on the debts did not create a secured creditor relationship between those lenders and Claxton.

■ As unsecured creditors, the petitioners qualify to sustain the Creditors' Petition against Claxton and may prove the full amount of their claims against him. The bankrupt may not insist that the creditors look first to their other security to satisfy their debts. *Ivanhoe Building & Loan Association v. Orr,* 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419 (1935).

Claxton argues that seven of the petitioners, their claims against him having been fully or partially satisfied since the petition was filed, should be permitted to withdraw their joinders in the petition.

In determining the sufficiency of the petition, however, the Court looks only to the petitioners' status as creditors under Section 59b on the date the original petition was filed. 3 *Collier on Bankruptcy,* 14th ed., ¶ 59.04, p. 562–63 and cases cited therein. It is on that date that the petitioners must be creditors of the bankrupt, their claims provable, and the aggregate of the unsecured portions of their claims equal to or in excess of $500.00.

■ Post-petition payment of one or all petitioning creditors does not deprive the court of jurisdiction or require dismissal of the petition. *Reed v. Thornton,* 43 F.2d 813 (9th Cir. 1930). Nor may the court permit a petitioning creditor to withdraw if to do so would defeat the petition. *Sheehan & Egan, Inc. v. North Eastern Shoe Co.,* 47 F.2d 487 (1st Cir. 1931). *Accord,* 3 *Collier on Bankruptcy,* 14th ed. ¶ 59.35, p. 662.

Important policy considerations underlie this rule, which is aimed at avoiding collu-

3. The SBA held pledges of some of Claxton's stock in Watkins as security for his guaranty, making the SBA a secured creditor within the meaning of the Act. Watkins, however, filed a liquidation proceeding in this Court on May 10, 1979. The SBA's collateral, therefore, is now and was on June 26, 1979, without value.

4. Although the new Bankruptcy Code does not govern this case, Section 303 of the Code is persuasive authority for the trustee's position that the narrow definition of secured creditor under Section 1(28) of the Act applies to creditors filing involuntary petitions under Section 59b.

Section 303 of the Code is the corollary to Section 59b of the Act. Section 303 specifies that the claims of petitioning creditors seeking to file an involuntary case must "aggregate at least $5,000 more than the value of any *lien on property of the debtor securing such claims* held by the holders of such claims." 11 U.S.C. § 303(b)(1) (emphasis added).

The legislative history to this section indicates that it was intended only to "make clear" prior law rather than to change it. *See* Legislative History quoted at Collier, *Bankruptcy Code,* Part 3, p. 47 (Pamphlet Ed. 1981).

sion between petitioners and the debtor. An involuntary petition protects all creditors of the debtor not only those presently before the court. *In re All Media Properties, Inc.*, 5 B.R. 126, at 144–145 (Bkrtcy.S. D.Tex.1980), *affirmed*, 646 F.2d 193 (5th Cir. 1981). If payment of the petitioners mandated dismissal, a debtor could induce a self-seeking petitioner to accept payment of his claim and withdraw from the petition. If this withdrawal defeated the petition, non-petitioning creditors would be denied the protection of the Act. *Sheehan & Egan, Inc. v. North Eastern Shoe Co., supra. See also In re J. W. Ward Farming Co.*, 295 F. 60 (5th Cir. 1923); *In re All Media Properties Inc., supra*, at 145 (decided under the Code); 3 *Collier on Bankruptcy*, 14th ed., ¶ 59.35, p. 662–63. Further, to permit such withdrawals would foster evasion of the provisions of Section 59g of the Act and Bankruptcy Rule 120(a). 11 U.S.C. § 95(g); Rule 120(a), Rules of Bankruptcy Procedure.

■ Claxton admits that Emerald Electronics, which is a wholly-owned subsidiary of a corporation of which he is a director and by whom he has been employed, has purchased several of the petitioners' claims and has continued to negotiate to purchase others. Claxton himself paid F&M's claim in full.

Therefore, none of the petitioning creditors will be permitted to withdraw.

Accordingly, the Court finds that none of the ten petitioning creditors was a secured creditor within the meaning of Section 59b of the Bankruptcy Act. None, except the SBA, held any property of Claxton as collateral for the debts. Since the SBA's collateral consisted of shares of Watkins owned by Claxton, which shares had no value on the date of the petition, the SBA also qualifies as an unsecured creditor, the amount of the debt being more than the value of the security. Therefore, it is quite clear that all ten petitioning creditors met the requirements for the filing and sustaining of an involuntary petition on June 26, 1979. The petition is, therefore, proper and the adjudication, entered March 21, 1980, subsequent to a trial, also was proper.

Post-petition payment of claims does not affect the Court's jurisdiction which subsists based upon the petitioners' status as creditors at the time the petition was filed. An involuntary petition protects all creditors of the bankrupt, not merely those who join in the petition. The Court must protect the interest of all creditors, petitioning and non-petitioning alike. Therefore, none of the petitioning creditors may be permitted to withdraw.

For the foregoing reasons and those set forth in the record, the motion of the debtor to vacate the adjudication of bankruptcy is denied.

An appropriate Order will enter.