991 F.2d 792
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re: UNITED STATES OPTICAL, INCORPORATED, formerly known
as Ace Sophisticates, Incorporated, Debtor.
UNITED STATES OPTICAL, INCORPORATED, formerly known as Ace
Sophisticates, Incorporated, Plaintiff-Appellant,
v.
CORNING INCORPORATED, Defendant-Appellee,
and
COBURN OPTICAL INDUSTRIES; Signet Armorlite, Incorporated;
Chesapeake & Potomac Telephone Company, Defendants.
 No. 92-1496
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 1, 1993
Decided: April 1, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., Chief District Judge. (CA-91-3254-B)
 Paula Fitzgerald Wolff, Potomac, Maryland, for Appellant.
 Gordon Laurence Lang, NIXON, HARGRAVE, DEVANS & DOYLE, Washington, D.C., for Appellee.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN and HAMILTON, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 United States Optical Company (USO) has appealed the grant of a petition for involuntary bankruptcy filed by Corning Incorporated (Corning), which sought relief against USO under Chapter 7 of the Bankruptcy Code. The bankruptcy court ruled that all of the requirements for the entry of relief under Chapter 7 had been proven and upon appeal the district court affirmed the bankruptcy court's order. USO argues on appeal that the petition was filed in bad faith and should therefore be dismissed. USO also charges that Corning did not conduct a proper pre-filing investigation, improperly solicited the other petitioning creditors to join the petition, and that the joined creditors were not in fact eligible creditors.
 
 I.
 
 2
 USO was a closely held Maryland corporation engaged in developing and selling optical products. Ronald Ace was the corporation's president and principal shareholder. He is also the owner of a patent for a laminated glass/plastic eyeglass lens product,"Photo-glastic," which he licensed to USO. Corning has been a large New York corporation that makes glass and optical products.
 
 
 3
 USO and Corning entered into two agreements in 1986-a Security Agreement and a Supply Agreement-designed to facilitate the development of USO's product. The Security Agreement spelled out Corning's agreement to guarantee USO's payment of a $1,000,000 note-later increased to $1.3 million-to Citibank, in exchange for a security interest in USO's physical assets. Under the Supply Agreement, Corning agreed to supply USO with photochromic lens pressings, and received a right of first refusal on the licensing of Photoglastic.
 
 
 4
 According to USO, the agreements were preceded for several years by efforts on the part of Corning to obtain USO's patent licensing rights for Photo-glastic. Those efforts, USO has contended, continued after the Security and Supply Agreements were signed. USO rejected all offers of Corning to buy the rights because it considered the offers insufficient. According to USO, the parties also orally agreed to exchange technical assistance and information as it was needed. That oral agreement was breached by Corning, according to USO, though consistently honored by USO. USO has maintained that Corning's refusal to disclose certain information about the glass it was supplying to USO led to the company's inability to perfect its product, and eventually caused USO's economic downfall.
 
 
 5
 USO defaulted on the Citibank note in August 1989, and Corning paid Citibank as agreed under the Security Agreement. Shortly thereafter, Corning and USO entered into an Extension and Standstill Agreement, under which, among other things, Corning agreed to give USO additional time to pay its obligation to Corning for satisfying the Citibank liability. The Agreement contained a release whereby USO discharged Corning "from any and all manners of claims or causes of action ... whether known or unknown."
 
 
 6
 Nine months after signing the Extension and Standstill Agreement, Corning brought an action against USO in district court to recover the money it had paid to Citibank pursuant to the Security Agreement. USO did not answer, and the parties entered into a Stipulation and Settlement Order under which USO admitted its obligation. When USO failed to pay its obligation as required by the Settlement Order, the Court entered judgment for Corning and against USO for $1,606,362.55.
 
 
 7
 Pursuant to the Security Agreement, Corning sold USO's physical assets at auction on September 25, 1990. Most of the equipment was purchased by USO's shareholders; the assets returned $65,000. USO effectively ceased doing business as of the auction. Shortly before the auction, Ace, the owner of the patent, sent a memorandum to USO claiming a termination of the license to USO of his patent for Photoglastic.
 
 II.
 
 8
 On December 4, 1990, Corning filed an involuntary petition for relief against USO under Chapter 7 of the Bankruptcy Code. USO answered that it had 12 or more creditors, and thus the petition had to be brought by 3 or more creditors. See 11 U.S.C. § 303(b). It filed a list of creditors, identifying 26 creditors, and shortly thereafter filed a second verified list. Both lists represented that Coburn Optical Industries (Coburn), Signet Armorlite, Inc. (Signet), and C & P Telephone (C & P) were creditors of USO.
 
 
 9
 Pursuant to Bankruptcy Rule 1003(b), the bankruptcy court provided a reasonable time for other creditors to join the petition. Both Signet and Coburn joined in the petition after receiving letters from Corning informing them of the pending petition and their right to join. An amended Creditors' Petition was filed and granted on May 13, 1991. C & P joined the petition in August.
 
 
 10
 The bankruptcy court held evidentiary hearings and decided that all of the prerequisites for the entry of an order under Chapter 7 were met. It found that Corning, Signet, Coburn and C & P, added following the initial December 4, 1990 filing, were all eligible creditors of the debtor, properly joined. It found the debtor generally unable to pay its debts as they became due. It rejected USO's contention that Corning had not conducted a proper pre-petition investigation of USO's creditors and thus acted in bad faith in filing the original petition. The court also rejected USO's contention that Corning's purpose for bringing the petition was improper. It held that the issue of whether the license for Photo-glastic was to be included within the estate of the debtor was irrelevant to the order of relief sought, and would be determined at another date by the trustee. It would also be up to the trustee to determine whether or not to pursue USO's claims that Corning had breached its oral agreement to supply technical information and assistance to USO.
 
 
 11
 After the bankruptcy court entered its written order, USO moved for a new trial on the grounds of equitable estoppel, which was denied. It then moved to convert the Chapter 7 case to a Chapter 11 reorganization. That motion was granted.
 
 
 12
 USO appealed to the United States District Court for the District of Maryland. After hearing argument, the district court rendered an oral opinion and written order affirming the bankruptcy court's opinion.
 
 
 13
 Shortly after the district court rendered its opinion, USO filed an action (later joined by Ace) against Corning in Maryland state court alleging, among other things, that Corning had breached its agreement with USO by failing to disclose to it certain information concerning the composition of the lens pressings Corning had previously sold to it. Corning removed the action to United States District Court, and moved to dismiss for summary judgment. The district court granted summary judgment, holding USO's claims were barred by its execution of a release to Corning in the Extension and Standstill Agreement. See Ronald S. Ace and United States Optical, Inc. v. Corning Incorporated, Civ. No. R-91-2795 (D. Md. 1992). USO's motion for reconsideration was denied.
 
 III.
 A.Bad Faith and Improper Purpose
 
 14
 Under the Bankruptcy Code, an involuntary petition shall be granted where (1) the debtor is a person against whom an order of relief may be entered; (2) where, if the debtor has 12 or more creditors, a petition is made by three or more entities who are holders of claims which aggregate at least $5,000; and (3) the debtor is generally not paying such debts as they become due. 11 U.S.C.s 303(a)(b), and (h).
 
 
 15
 Appellant USO has not contested that it is a debtor with 12 or more creditors or that it was not able to pay its debts as they came due.
 
 
 16
 Rather, it has charged that the involuntary bankruptcy petition should be dismissed because Corning filed it in bad faith. USO's allegations of bad faith amount to a contention that Corning engaged in an extended pattern of dealing with USO designed to put USO out of business and force it to forfeit its patent for Photo-glastic. According to USO, Corning first attempted to buy the patent from USO; next guaranteed USO's loan and agreed to supply glass to USO so that USO could develop the product; then promised but failed to supply technical assistance so that USO could perfect the product, withholding its help until USO was unable to pay on the note; forced USO to stop operating by foreclosing on the company's physical assets; and finally, as its coup de grace, filed the involuntary petition so that it could obtain the Photo-glastic patent license at a bargain price.
 
 
 17
 The bankruptcy court rejected USO's allegations of Corning's bad faith dealings over the years as irrelevant to the filing of the petition itself. It pointed out that while USO viewed the patent license as the "prize" in the dispute, the issue of whether the license was part of the bankrupt estate-and therefore whether USO would be forced to sell it and Corning entitled to attempt to purchase it-was not before the court. The court found that Corning's purpose in filing the petition was to enable it to collect the debt owed to it from all sources available to the debtor, and that such was a proper purpose.
 
 
 18
 Reviewing the evidence anew, the district court on appeal questioned the harm suffered by USO as a result of Corning's refusal to give USO technical information, and noted that USO had a separate pending suit which would resolve the matter. As for Corning's alleged desire to destroy USO, the court noted that USO had already ceased to exist actively by the time the petition was filed. Finally, as for Corning's desire to obtain the patent as satisfaction for USO's debts, the court found that the bankruptcy court reasonably concluded that Corning's purpose was legitimate. A sale in a free and legitimate manner would have to occur as part of the bankruptcy proceeding and Corning, if it bid on the patent license, would be required to pay a fair price. The allegations of Corning's motivations and conduct, even if proven, did not show that the petition for involuntary bankruptcy was filed in bad faith.
 
 
 19
 Courts are duty bound to conduct an inquiry, if requested, to determine whether an involuntary petition has been filed in good faith. See In re Matter of Winn, 49 B.R. 237, 239 (Bankr. M.D. Fla. 1985). Bad faith filings are to be dismissed. Id. The finding of bad faith in an involuntary bankruptcy proceeding is a factual issue. In re Advance Press & Litho, Inc., 46 B.R. 700, 704 (Bankr. D. Colo. 1984); In Re Molin Drilling Co., Inc., 68 B.R. 840, 843 (Bankr. D. Mont. 1987). A filing is presumed to be in good faith, and the existence of bad faith must be proven by the debtor by a preponderance of the evidence. Id.; In re Alta Title Co., 55 B.R. 133, 140 (Bankr. D. Utah 1985).
 
 
 20
 Courts have differed on what constitutes bad faith, and have found it in a wide spectrum of activity. See In Re Petralax Stainless, 78 B.R. 738, 743 (Bankr. E.D. Pa. 1987). No one single factor will show bad faith. Rather, the totality of the circumstances must be evaluated to determine whether the petition has been filed in bad faith. In Re Caucus Distributors, Inc., 106 B.R. 890, 907 (E.D. Va. 1989). Thus, all of the evidence going to USO's allegations of bad faith was relevant to the issue.
 
 
 21
 Courts have used various standards to judge bad faith filings. See In re Wavelength, Inc., 61 B.R. 614, 619-20 (Bankr. 9th Cir. 1986) (noting that the Code does not define bad faith and that courts have used vague definitions). For example, some courts use an objective standard and ask whether a prototypical reasonable person in the position of the creditor would have filed the petition. See In re Grecian Heights Owners' Association, Inc., 27 B.R. 172, 173 (Bankr. D. Oreg. 1982). Others apply a subjective standard and analyze the petitioner's motivation. See Basin Electric Power Cooperative v. Midwest Processing Co., 47 B.R. 903, 909 (D.N.D. 1984), aff'd, 769 F.2d 483 (8th Cir. 1985). Most courts combine the approaches and apply both a subjective and objective test. See, e.g., United States Fidelity & Guaranty Co. v. DJF Realty & Supplies, 58 B.R. 1008, 1012 (N.D.N.Y. 1986); In re Alta Title Co., 55 B.R. 133, 141 (Bankr. D. Utah 1985).
 
 
 22
 We conclude, as did the bankruptcy court and the district court, that USO did not prove that Corning's petition was filed in bad faith. We look at both the subjective motivations of Corning and what a reasonable person in the position of Corning would have done. Subjectively, Corning may have been interested in the patent for several years, as Ace testified, and even may have made promises, later broken, to assist USO in developing its product. But USO's theory of bad faith filing has been premised on the notion that all of Corning's dealings leading up to the petition were bad faith efforts to position itself for the final putsch, the involuntary bankruptcy petition. Such a theory would be difficult to prove in the best of circumstances and USO's claimed lack of effective counsel during early dealings with Corning has not helped. Yet USO has not proven anything approaching the malice or unconscionable behavior required by some courts to meet the subjective prong. See Camelot, Inc. v. Hayden, 30 B.R. 409, 411 (E.D. Tenn. 1983), citing 2 Collier on Bankruptcy p 303.12 (15th ed. 1979) (requiring actual malice or the desire to harass); In re Trans High Corp., 3 B.R. 1 (Bankr. S.D.N.Y. 1980) (requiring petitions to be consciously and wickedly indifferent to truth or falsity of allegation in petition).
 
 
 23
 We cannot conclude, on the basis of the record, that Corning, out of an improper desire to obtain USO's patent license, forced USO to default on its loan, to fail in its efforts to develop the product, to close its business, and to wind up in the position in which it now finds itself: owing Corning over $1 millon and having as its only potential asset the coveted patent license. Neither can we say that a reasonable person in the position of Corning would not have filed an involuntary petition in an effort to recover the substantial amount of money it was owed. Accordingly, we affirm the district court's determination that the involuntary petition for bankruptcy should not have been dismissed on the basis of bad faith.
 
 B.Pre-Petition Investigation
 
 24
 USO has also charged that Corning initiated its filing of the petition with knowledge that USO had more than 12 creditors and without conducting an adequate pre-petition filing investigation. Under Basin Electric Power Coop. v. Midwest Processing Company, 769 F.2d 483, 486 (8th Cir. 1985), cert. denied, 474 U.S. 1083 (1986), an initiating creditor who files as a sole petitioner with the knowledge that the debtor has 12 or more creditors (and thus that three creditors are needed to file the petition) files in bad faith.
 
 
 25
 At the hearing, USO's counsel attempted to establish Corning's knowledge of USO's multiple creditors, but was unable to establish any definitive knowledge. The testimony consisted of Ace saying that he had had numerous discussions over several years with Corning executives in which he indicated that he was "scrambling for money all the time to pay all our creditors," and that"my landlord in particular was giving me a hard time." The testimony was vague and the attorney's efforts to elicit it were hindered by numerous objections. Corning, on the other hand, produced evidence that prior to filing the petition, it obtained a Dunn & Bradstreet report, and did a search in Prince George's County records looking for UCC filings, unsatisfied judgments, and tax liens. The bankruptcy court held, and the district court agreed, that while Corning could perhaps have conducted a more comprehensive search, Corning acted as a reasonable person would in conducting an investigation. Moreover, the bankruptcy court held, Bankruptcy Rule 1003 specifically affords a reasonable opportunity to join other creditors because it anticipates the likelihood of error. We agree that there was substantial support for applying those rules here.
 
 
 26
 On appeal, USO has asserted without citation to any source that "any experienced business person knows that those two sources of information about creditors [-a lien search and a Dunn & Bradstreet investigation-] are neither thorough nor complete." However, the law presumes that a petition is filed in good faith, and the party contending that a creditor engaged in bad faith by conducting an inadequate investigation as to the number of creditors bears the burden of proof of establishing such bad faith by a preponderance of the evidence. See In re Alta Title Company, 55 B.R. 133, 141 (Bankr. D. Utah 1985). Courts have not held petitioners to a high standard for the pre-filing investigation. See In re Crown Sportswear, Inc., 575 F.2d 991, 993 (1st Cir. 1987); In re Molen Drilling Co. Inc., 68 B.R. at 843. Accordingly, USO has not met its burden of proof that Corning's pretrial investigation was inadequate or that it knew that USO had 12 or more creditors.
 
 
 27
 C.Continued Joinder of Coburn and Signet as Additional Petition ing Creditors
 
 
 28
 USO has further argued that Coburn and Signet were never properly joined as valid petitioning creditors because they were not in fact creditors of USO and because they were improperly solicited by Corning to join the petition. USO has also argued that Coburn and Signet should have been allowed to withdraw when they requested leave to do so, since their joinder was improper.
 
 
 29
 Those contentions are without merit. USO itself listed Coburn and Signet as creditors in both its first and second verified list of creditors. Ace testified at trial that he was unschooled in the meaning of claims and creditors, and that he was confused between USO's debts and his own personal ones. However, the lists were sworn affidavits and were submitted by USO's then counsel, and both Coburn and Signet believed and represented that they were creditors of USO. USO's contentions to the contrary were heard by the bankruptcy court, whose determination that Coburn and Signet were in fact creditors for purposes of joining the petition is not clearly erroneous.
 
 
 30
 It is permissible for one petitioning creditor to seek out others to join a petition for an involuntary bankruptcy proceeding, absent some showing of fraud or falsity. U.S. Fidelity & Guar. Co. Company v. DJF Realty & Suppliers, Inc., 58 B.R. 1008, 1112-13 (N.D.N.Y. 1986). USO did not show at trial any way in which the letters Corning sent to Coburn, Signet, and the other creditors were false. USO has contended on appeal that the letters were misleading in that they did not mention that Corning had already foreclosed on USO's physical assets nor that the patent was not part of USO's estate. But Corning has been consistent in its belief that the patent is part of USO's estate and that its motivation in filing the petition is its desire to obtain its fair share of the proceeds from sale of it. Although Corning's letter did not mention the patent or the foreclosure sale, it gave sufficient information to the creditors and was based on sufficient information and belief as to the availability of proceeds in bankruptcy to meet its obligation in soliciting co-petitioners.
 
 
 31
 USO's argument that Coburn and Signet should have been allowed to withdraw is similarly without merit. The jurisdiction of the court attaches from the date of the filing of the involuntary petition. Reed v. Thorton, 43 F.2d 813 (9th Cir. 1930); In the Matter of Claxton, Ill., 21 B.R. 905, 908 (Bankr. E.D. Va. 1982). Each of the petitioners were eligible creditors at that time, and each indicated a willingness to join the petition. Courts have generally not allowed an eligible petitioner to withdraw if to do so would defeat an involuntary petition. Id. See also, e.g., Sheehan & Egan, Inc. v. North Eastern Shoe Co., 47 F.2d 487, 489 (1st Cir. 1931); In re Molen Drilling Co, Inc., 68 B.R. at 842-43; In re Ross, 63 B.R. 951, 962 (Bankr. S.D.N.Y. 1986). The reasons for that rule are straightforward: if creditors could withdraw from a petition and deprive the court of jurisdiction, debtors and creditors could collude and other creditors would be deprived of the protection of the Bankruptcy Code. Having been properly joined, Coburn and Signet could not withdraw from the petition and deprive the court of jurisdiction. The contention that Signet should have been allowed to withdraw because USO returned the merchandise for which it owed Signet money, likewise is no reason to permit withdrawal. The bankruptcy procedure exists to permit the orderly payment of debts to all creditors. That purpose would be defeated if a creditor could, after joining a petition, obtain repayment on its own account by way of a return of merchandise, or otherwise, and then withdraw from the petition.
 
 
 32
 Accordingly, we affirm the trial court's determination that Coburn and Signet were properly joined and could not withdraw.
 
 D.Official Date of Filing
 
 33
 USO finally has claimed, for the first time on appeal, that the date of the filing of the involuntary petition should be deemed to be May 13, 1991, the date that Coburn and Signet joined the petition, rather than December 4, 1990, the date that Corning filed the original petitioner as a sole creditor. USO has cited no precedent to support its request, arguing that "sound public policy" mandates that the date of the Amended Petition should be the official filing date of the petition because otherwise creditors would be "rewarded for filing in haste, without making proper prefiling investigations, just to assure for themselves a generous bankruptcy estate." Corning has argued that in the absence of a bad faith filing, it is the original filing date that controls the administration of a case. The claims of the subsequent petitioning creditors, therefore, should be deemed to have been filed as of the original filing date.
 
 
 34
 Neither party has submitted authority precisely on point. USO has supplied no reason why the issue, which was not raised below, should be considered for the first time on appeal, particularly bearing in mind that there was no clear error by the bankruptcy court. Since the petition was deemed to have been filed in good faith and a withdrawal of the intervening creditors found inappropriate, we will not disturb the bankruptcy court's determination of the date of filing.
 
 The judgment is
 
 35
 AFFIRMED.