**AIR–EXEC, INC., an Oklahoma Corporation, Plaintiff-Appellee,**

v.

**TWO JACKS, INC., a Tennessee Corporation, and Jack Adams, Sr., an Individual, Defendants-Appellants.**

No. 76–1982.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 13, 1978.

Decided Aug. 22, 1978.

Rehearing Denied Sept. 15, 1978.

---

James C. Lang, Tulsa, Okl. (Brian S. Gaskill, Sneed, Lang, Trotter & Adams, Tulsa, Okl., with him on the brief), for defendants-appellants.

J. Peter Messler, Tulsa, Okl. (Phillip Breckinridge, Brown, Breckinridge & Messler, Tulsa, Okl., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is a diversity case brought by Air-Exec, Inc. against Two Jacks, Inc. and Jack Adams, Sr. (defendants or appellants) for conversion of a DC–3 airplane. A jury rendered a verdict against defendants for $60,000, and they have appealed to this Court.

The only points raised and argued here are that a Colorado partnership (Air-Exec) and a Colorado bank (Fort Carson National Bank) were indispensable parties required to be joined in the action under Fed.R. Civ.P. 19(a), and that the jury verdict did not reflect the actual decision by the jury.

The contention that the Air-Exec partnership should have been joined is based upon the fact that a security agreement giving a lien upon the airplane to Fort Carson National Bank was signed by James W. Webb and Thomas H. Collins, Jr. as partners of Air-Exec, and the title document by which plaintiff claimed title left the name of the purchaser (owner) blank. Defendants-appellants argue that after being required by this verdict to pay full value for the plane they may face a future action of the same type by the partnership or other owner. The answer to this contention with respect to joining Air-Exec, the partnership, is twofold.

■ First, the pretrial order contains a statement of admitted facts including the following:

b) That the plaintiff is the proper party to bring this action.

c) That the plaintiff herein through James Webb, its president, on or about the 26th day of February, 1975, did in fact purchase said aircraft from Tul-Aero, Inc., through Larry Leffingwell, president.

Unless the court modifies its pretrial order, the parties are bound by their admissions and stipulations included in the order and may not contradict its terms. 3 Moore's Federal Practice ¶ 16.19, at 1130–1131 (2d ed. 39). Since no objections or motions to amend the pretrial order were ever made, it measures the dimensions of the lawsuit

both in the trial court and on appeal. *Hodgson v. Humphries*, 454 F.2d 1279, 1281 (10th Cir. 1972). It is therefore inappropriate for defendants to raise upon appeal what they had previously admitted, at least inferentially, that Air-Exec was not an indispensable party.

■ Alternatively, we note that after overruling a motion by defendants labeled a "demurrer to the evidence" based upon the insufficiency of proof of ownership by Air-Exec, Inc. of the airplane, the court submitted the question of ownership to the jury. It gave an instruction that as one of the essential elements of the burden of proof "[t]he plaintiff must show title or ownership in itself of the property involved," and "[t]he plaintiff must prove its ownership or right of possession by a preponderance of the evidence." In rendering its verdict the jury necessarily resolved this question in favor of the plaintiff. Even though there was no direct attempt by plaintiff to prove the validity of its title, no doubt because of the pretrial order, there was in the record sufficient evidence to support the finding that Air-Exec, Inc. was the owner of the aircraft. The checks involved in the exchange by which the DC–3 was acquired were made out to Air-Exec, Inc. James W. Webb, President of Air-Exec, Inc., and also one of the partners of Air-Exec, testified that the name of the purchaser in the bill of sale was left blank because they were "about to incorporate," and he gave considerable testimony concerning payments to the Fort Carson bank and the obligation of the plaintiff to pay off that note.

■ Defendants-appellants claim that Air-Exec, Inc. might not pay off the loan to the Fort Carson bank, and they may be required to pay or to surrender the airplane in which the bank has a security interest. They thereby try to bring themselves within Fed.R.Civ.P. 19(a)(2)(ii), that they are "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." We hold their contention that the Fort Carson bank is an indispensable party is also without merit.

First, we note the bank's interest was known at the time of the pretrial order and mentioned in it. Defendants made no attempts to force it to become a party to the litigation and made no complaints about its absence until after trial. In the face of its knowledge of the bank's interest it filed no objection to the pretrial statement of admitted facts that the plaintiff is "the" proper party to bring the action. Therefore, it is bound by the pretrial order, as above discussed. *Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968), in an analogous situation, states, "After trial . . . if the defendant has failed to assert this interest, [to require joinder] it is quite proper to consider it foreclosed."

Second, we do not believe the security interest of the bank is within the category of "inconsistent obligations" drafters of Rule 19 had in mind. It is well established as a general proposition of law that a converter of property may not assert an interest in a third party, through whom the converter does not claim title or a right to possession, to defeat an action for conversion. *See* 18 Am.Jur.2d *Conversion* § 59 (1965). As stated in Restatement (Second) of Torts § 224A, Comment b (1965):

It is immaterial that the one in possession of the chattel is not entitled to retain possession as against some third person, or that he has obtained possession wrongfully.

In any event, when evaluating possible harm to the defendants we are to look at the practical probabilities more than the theoretical possibilities. 3A Moore's Federal Practice ¶ 19.07–2[1] (2d ed. 39); *State Farm Mutual Automobile Ins. Co. v. Mid-Continent Casualty Co.*, 518 F.2d 292 (10th Cir. 1975). The practical probabilities here seem rather remote. No doubt the bank, under its security agreement, can compel the plaintiff to pay its obligation from the judgment here. The testimony indicated the bank has been putting pressure upon Air-Exec, Inc. for payments. The contention that there might be future litigation

against defendants by the bank is speculation, and no reason for a new trial in the instant case. We note that if the defendants are ever called upon to pay the bank anything to prevent repossession of the airplane they will be subrogated to the bank's claim against Air-Exec, Inc.

Finally, defendants-appellants insist that the affidavit of juror Marilyn Calvert demonstrates that the jury's verdict did not reflect the jury's true intentions. That affidavit, after reciting the verdict, declared:

The Court stated a finding for the Plaintiff would not extinguish the lien of Fort Carson National Bank of Fort Carson, Colorado. We, therefore, awarded the Plaintiff a sum of Forty-five Thousand Dollars ($45,000.00) to satisfy the lien and an additional Fifteen Thousand Dollars ($15,000.00) damages, arriving at the total sum of Sixth [sic] Thousand Dollars ($60,000.00).

*Young v. United States*, 163 F.2d 187, 189 (10th Cir.), *cert. denied*, 332 U.S. 770, 68 S.Ct. 83, 92 S.Ct. 355 (1947) sets forth the rule as to when jurors may or may not testify with respect to the jury verdict:

Jurors cannot be heard to testify that while the substance of the verdict returned into court was understood, it was predicated upon a mistake of the testimony, a misrepresentation of the law, unsound reasons, or improper motives. But jurors are competent witnesses for the purpose of showing that through oversight, inadvertence, or mistake respecting the substance of the verdict returned into court, is [sic] was not the verdict on which agreement was actually reached in the jury room.

The instant case clearly falls outside the "oversight, inadvertence, or mistake respecting the substance" category. The $60,000 total was well within the evidence as to value of the airplane; and the jury was instructed to determine that value if it found for plaintiff. The affidavit either shows the jury's method of arriving at the $60,000 figure or its expectations as to how the plaintiff would apply the total, perhaps under the mistaken assumption as to the

law that plaintiff had to pay off the bank from the verdict. We do not read the juror's statement to mean that the jury intended to award only $15,000 to the plaintiff, or that it would not have made the same judgment had it known the money might not be applied immediately to the debt.

The judgment is affirmed.