In the Matter of Philander P. CLAXTON, III, Bankrupt.

Richard A. BARTL, Receiver in Bankruptcy, Plaintiff,

v.

Jeffrey T. TWARDY and Allen & Company, Inc. and Thomas R. Dibenedetto and J. Gerald Combs and George W. Siguler and Nella Company, Defendants.

Bankruptcy No. 79–684–A.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Aug. 8, 1983.

Richard J. Stahl, Annandale, Va., for bankrupt.

Richard A. Bartl, Alexandria, Va., trustee in bankruptcy.

Robert O. Tyler, Alexandria, Va., for Richard A. Bartl.

Ronald L. Walutes, Annandale, Va., trustee in bankruptcy, for Watkins Corp.

John S. Stump, Fairfax, Va., for Ronald Walutes.

Jeffrey T. Twardy, Alexandria, Va., pro se.

Carl F. Bowmer, Richmond, Va., for Allen & Co., Inc., Thomas R. DiBenedetto, J. Gerald Combs, George W. Siguler and Nella Co.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

The issues here arise on the complaint of Richard A. Bartl, Receiver in Bankruptcy [1],

---

**1.** Richard A. Bartl, who was receiver for Clax- ton, III at the inception of this complaint, is

seeking a determination by the Court that a deed of trust conveying to the defendants an interest in real property formerly held by the bankrupt, Philander P. Claxton, III ("Claxton, III") is null and void as fraudulent to creditors.

The deed of trust in controversy encumbers 5.3 acres of a land parcel in McLean, Virginia, consisting of approximately 7.3 acres, with a residence ("the property"), and of which the bankrupt was, until May 22, 1979, the record owner. On May 1, 1979, Claxton, III executed the deed of trust in favor of the defendants. Said document was recorded May 7, 1979 as a purported fifth deed of trust. Claxton, III lost title two weeks later when Clasic Homes, Inc. ("Classic") recorded a previously escrowed deed to the property. Claxton, III had executed this escrow deed on April 20, 1979, pursuant to a consent decree settling prior state court action between Classic and Claxton, III. Several creditors of Claxton, III filed an involuntary petition in bankruptcy against him on June 26, 1979, slightly more than one month following transfer of the property to Classic. Further facts will appear as they relate to the issues to be determined.

As a threshold matter, defendants have moved to dismiss this proceeding and raised a "suggestion of lack of subject matter jurisdiction" of this Court to deal with conflicting claims to the property. Defendants question whether this Court may consider a challenge to the validity of a transfer when at the time of filing of the petition in bankruptcy title to the property was no longer in the bankrupt but in Classic Homes, Inc.

Defendants argue that this Court has no jurisdiction over the property at issue because, at the time the bankruptcy petition was filed, Claxton, III was no longer the owner of the property and had no interest in it which could have been transferred by him or levied upon and sold under judicial process by creditors. Defendants argue further that the transfer of title from Claxton, III to Classic occurred under the terms of an order of a state court of competent jurisdiction and, therefore, cannot be considered fraudulent.

The Trustee in Bankruptcy responds that Section 70a of the Bankruptcy Act of 1898 ("the Act") [2] vests in the trustee title to any property transferred by the bankrupt in fraud of his creditors, and that Section 2a(7) of the Act empowers bankruptcy courts to cause the estates of bankrupts to be collected. It is the trustee's position that these two provisions of the Act demonstrate that title to property and subject matter jurisdiction are not co-extensive. Rather, the trustee argues, bankruptcy courts may examine a pre-petition transfer of property by a bankrupt to determine whether the transaction effected a fraud against creditors, issues which never arose in the state court action.

Section 70a of the Act vests in the Trustee in Bankruptcy title to all the bankrupt's non-exempt property as of the date of the filing of the petition [3]. Under subsection a(4) of Section 70, the title of the Trustee

now Trustee in Bankruptcy of the estate of Claxton, III. *See* footnote 3, *infra.*

**2.** The bankruptcy petition against Claxton, III was filed prior to the October 1, 1979 effective date of the Bankruptcy Code, the current Title 11 of the United States Code. Accordingly, this case continues to be governed by the former Bankruptcy Act of 1898. (Act of November 6, 1978, PL 95–598, Title IV § 403(a), 92 Stat. 2683.)

**3.** This follows even when adjudication occurs much later. Once the order of adjudication is entered and a trustee appointed, the trustee's title "relates back" to the date of filing. (*In re*

*Lustron Corp.,* 184 F.2d 798 (7th Cir.1950); *In re Diamond's Estate,* 259 F. 70 (6th Cir.1919).) In the instant case, Claxton, III was the subject of an involuntary petition filed June 26, 1979. An order of adjudication was entered March 21, 1980. Claxton, III moved to vacate the order and, following further hearings, the Court denied the motion on March 8, 1982. Richard A. Bartl, Claxton, III's receiver, was appointed trustee at the first meeting of creditors held April 12, 1982. The trustee's title to the bankrupt's property however, dates from June 26, 1979. A receiver exercises the same rights during the pendency of adjudication proceedings. (Bankruptcy Act § 69; Rule 201 Rules of Bankruptcy Procedure.)

extends to property transferred by a bankrupt "in fraud of his creditors." (Bankruptcy Act of 1898, § 70a(4); 11 U.S.C. § 110a(4) (repealed) (cited hereafter as "Bankruptcy Act"). *See also,* Bankruptcy Act, § 70a(5).)

The Act defines as fraudulent any transfer made or incurred within one year prior to the filing of a petition in bankruptcy which is either (a) made without fair consideration by a debtor who is or thereby becomes insolvent, or (b) made with actual intent to hinder, delay or defraud creditors. (Bankruptcy Act § 67d(2).) Section 67, subsection d(6), states that any such transaction "shall be null and void against the trustee...." (Bankruptcy Act § 67d(6).) Section 67d(6), however, is not self-executing. Rather it requires the Trustee in Bankruptcy to act affirmatively to recover the property and bring it into the bankruptcy estate for the benefit of creditors. (4 *Collier on Bankruptcy* (14th ed.), ¶ 67.41[3] at 585 and cases cited therein.) [4] Defendant's argument that this Court lacks jurisdiction because at the time the petition was filed the bankrupt no longer could have transferred the property is without merit. The ancient right asserted by the Trustee in Bankruptcy derives by operation of law not from the bankrupt but from the creditors of the bankrupt and dates from the Statute of 13 Elizabeth. (*Bush v. Export Storage Co.,* 136 F. 918 (E.D.Tenn.1904).) Under Section 70e(2), the Trustee in Bankruptcy may follow the property into the hands of anyone who may have received it. (*Id.; See also,* 4B *Collier on Bankruptcy* (14th ed.), ¶ 70.-92[5] at 1067–1068.)

Section 2 of the Act confers upon the Bankruptcy Court jurisdiction over all of a debtor's non-exempt property and subsection a(7) of Section 2 expressly grants to said courts the power to "[c]ause the estates of bankrupts to be collected...." (Bankruptcy Act § 2a(7).) [5] This Court could lack subject matter jurisdiction over the instant proceedings only if they did not relate in any way to the estate of the bankrupt. Claxton, III transferred the property at issue within one year of the filing of the petition, an action that rendered the transfer subject to judicial scrutiny as allegedly having been accomplished in fraud of creditors. This jurisdiction to inquire into prepetition transfers of property is similar to the authority of bankruptcy courts hearing dischargeability matters to look behind a state court judgment to determine the nature of the debt for which judgment was entered. *Matter of Pigge,* 539 F.2d 369 (4th Cir.1976). Accordingly, this Court has subject matter jurisdiction to hear disputes concerning the property [6].

The Trustee in Bankruptcy also argues that defendants confuse subject matter jurisdiction with this Court's summary jurisdiction under the Bankruptcy Act. When there has been a pre-petition transfer of property by the bankrupt, the transferee may object to the summary jurisdiction of the Bankruptcy Court and demand a plenary proceeding in the District Court. (Bankruptcy Act § 2a(7).) Under Section 2a(7) and Bankruptcy Rules 712 and 915, such an objection must be raised timely, either by pre-answer motion or in the answer, whichever is served first. Otherwise the objection is waived. Defendants filed the motion on October 23, 1980, almost three

---

4. Section 70e confers on the Trustee in Bankruptcy similar power to avoid any transfers which are fraudulent under applicable state law. (Bankruptcy Act § 70e.)

5. The Supreme Court in the case of *Cline v. Kaplan,* 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944), cited by the defendant, sustained a defendant's objection to jurisdiction based on the defendant's allegation that the bankrupt did not own the property. However, this case was later overruled by Congress with the enactment in 1952 of Section 2a(7).

6. *Collier on Bankruptcy* states that "subject matter jurisdiction in a bankruptcy setting, essentially goes only to the original issue as to whether the bankrupt is a proper party who may utilize the benefits of the Bankruptcy Act or who may be proceeded against as an involuntary bankrupt". (13 *Collier on Bankruptcy* (14th ed.), ¶ 712.05[2] at 7–179.) Therefore, once the case has been filed and is pending, disputes and proceedings "arising within that case do not raise the strict issue of subject matter jurisdiction." (*Id.*)

months after filing of the answer, or untimely.

In addition, the Court notes that defendants appear to address their objection to the exercise of summary jurisdiction over the conflicting claims of the trustee and Classic Homes rather than asserting it as to their own claim. The trustee avoided as fraudulent Claxton, III's deed of the property to Classic by an action in this Court. The parties settled the action, and this Court approved the settlement in an Order entered June 3, 1980. At minimum, the assertion that such exercise of jurisdiction was improper forms the basis for defendants' objection to this Court's jurisdiction over their claim of interest in the property.

■ The Bankruptcy Court may exercise summary jurisdiction regardless of objections if the Court determines that the objecting transferee's claim: (1) is not adverse to the estate (*e.g.*, property held by an agent or bailee of the bankrupt), or (2) is only colorable (cannot be substantiated). (*See, e.g., Loyd v. Stewart & Nuss, Inc.*, 327 F.2d 642 (9th Cir.1964).) When a potentially adverse claimant objects to summary jurisdiction, the determination of whether the claim actually is adverse is made on the facts as they existed at the time of the filing of the petition. If the Court determines that the claim was not adverse on that date the Court may exercise summary jurisdiction. (*American Mannex Corporation v. Huffstutler*, 329 F.2d 449 (5th Cir. 1964).

■ Classic was the record owner of the property on the date of filing of the petition. As such, it was an adverse claimant to the property and could have objected to summary adjudication. Classic, however, consented to this Court's jurisdiction. Defendants, who assert an objection in this separate proceeding, have no standing to challenge this Court's summary jurisdiction over Classic's claim in the former action. Accordingly, the Court finds that even if the objection to jurisdiction had been otherwise properly and timely asserted, it must be overruled.

■ Defendants also have filed a motion for relief from the order of this Court which avoided the transfer of the property from Claxton, III to Classic. Defendants contend that as creditors claiming an interest in the property they were necessary or indispensable parties to any action that might impair or impede their ability to protect their interest therein. In addition, defendants state that they received no notice of the proceedings which led to entry of the order and argue that this failure to notify of a proceeding which might jeopardize their interest in the property was a violation of their fundamental rights to due process. Defendants argue also that settlement terms approved in the Court's order are not in the best interest of creditors.

The trustee has responded with a motion *in limine* requesting a ruling that the defendants may not properly go forward with their motion for relief from the Court's Order until defendants have satisfied the Court that they were "parties" to the proceeding in which the Order was entered. In support, the trustee argues that Rule 60(b) of the Federal Rules of Civil Procedure, under which defendants made the motion, restricts relief from a judgment or order to a "party" (or his legal representative).

The requirement that one seeking relief from a judgment or order must have been a party thereto has been strictly enforced by the courts. 7 *Moore's Federal Practice*, ¶ 60.19, p. 241 (1982). Accordingly, defendants here have no standing to request relief from an order entered in another proceeding to which they were not parties and the Trustee's motion is granted.

Assuming, *arguendo*, that defendants' motion here had been properly brought, said motion still would have been denied. Defendants' argument that they were necessary parties to the dispute between Classic and the receiver is based upon Rule 719 of the Rules of Bankruptcy Procedure. Bankruptcy Rule 719(a) states, in pertinent part, that a person:

shall be joined as a party in the proceeding if (1) in his absence complete relief cannot be accorded among those

already parties, or (2) he claims an interest relating to the subject of the proceeding and is so situated that the disposition of the proceeding in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. (Rule 719(a), Rules of Bankruptcy Procedure.) Bankruptcy Rule 719 is adapted from Rule 19 of the Federal Rules of Civil Procedure and for purposes of making the determination required here the relevant factors to be considered are identical.

 Holders of a lien or security interest are not indispensable parties. (*Air-Exec, Inc. v. Two Jacks, Inc.,* 584 F.2d 942 (10th Cir.1978).) Moreover, when the court can afford complete relief to those already parties and disposition of the action will not impair the absent party's ability to protect his interest, the court may proceed. (*Trail Realty, Inc. v. Beckett,* 462 F.2d 396 (10th Cir.1972).) In this case, the relief sought was the voiding of Claxton, III's deed to Classic, and both the receiver and Classic were before the Court. No other persons were required for the purpose of effecting that action. The effect of the order voiding Classic's deed was to return record title to the bankrupt and, by operation of law, vest that title in the receiver. This Court's order did not impair or impede defendants'. ability to defend their interest. Had the Court undertaken to decide issues regarding the validity of defendants' interest in the property, such action would have impaired their ability to defend their title. The Court took no such action. In the instant proceeding, indeed, defendants have been and will be afforded a full opportunity to defend their title to and interest in the property.

The remedy, when a demand for joinder is successful, is for the Court to order the · person to be joined. If for any reason the person cannot be joined, the Court may consider dismissing the action (so that the plaintiff may seek a remedy in another court), but the Court is not required to do so. In any case, failure to join a party, even a "necessary" party does not deprive a court of subject matter jurisdiction or subject the court's action to attack by other than the traditional means of appeal. Defendants had no standing to appeal this Court's order of June 3, 1980 because they were not parties to the action. Similarly, in the instant proceeding, which is a separate suit involving the same parcel of real property, defendants have no standing to attack collaterally the order entered in the prior action. As for due process, regarding the validity of their deed of trust on the property, defendants in the trial in this proceeding have had their "day in court".

 Defendants assert that the failure of the trustee to provide them with notice of the hearing on approval of the settlement between the trustee and Classic was a violation of Rule 203(a)(3) of the Rules of Bankruptcy Procedure. The trustee responds that it was impossible to comply with the requirement of the Rule that notice be sent to all creditors because the bankrupt, who was resisting adjudication, had not filed the schedules listing said creditors with addresses.

Rule 203(a)(3) of the Rules of Bankruptcy Procedure requires that all creditors be given notice of any hearing on settlement of a controversy unless the Court for good cause shown directs otherwise.

The deed of trust granted by Claxton, III to the defendants was recorded prior in time to the recording by Classic of its escrow deed. Thus, this deed of trust was a lien of record and was so listed in the documents filed with the Court in connection with the settlement of the action between the trustee and Classic. Accordingly, the identity of the defendants, if not their addresses, was known to the trustee at the time of the hearing to approve the settlement. Notice to creditors was expressly waived in the order entered by the Court approving the settlement. The defendants, however, are prior lien holders. Their lien was not affected by the avoiding of the deed to Classic but remained an encum-

brance on the property. The defendants, therefore, were not prejudiced by the failure of the trustee to give the required notice or by the waiver of notice by the Court. Accordingly, if error occurred, it was harmless error and not grounds for granting relief from the Order entered pursuant to the hearing.

▊ Defendants argue further that this Court had no jurisdiction to enter the order voiding Claxton, III's deed to Classic because Classic was a *bona fide* purchaser for value of the property. Section 67d(6) of the Bankruptcy Act protects a transferee of a bankrupt's property who is *bona fide* purchaser for value. The Trustee in Bankruptcy admits that Classic was a *bona fide* purchaser but argues that the transaction was not for "value". Rather, the trustee argues that no present consideration passed between the parties and that upholding the transaction would have permitted certain lienholders (including the defendants herein) to obtain a greater percentage of their debt than other creditors of the same class in violation of Section 67d(3) of the Act. Classic had an opportunity to defend the conveyance as a *bona fide* purchase for value but chose to settle the action. Regardless of the actual merits of the arguments advanced, however, defendants have no standing to challenge an order entered in another proceeding.

Accordingly, and for all the foregoing reasons, the objections of the defendants to the jurisdiction of this Court are overruled, and the motion to dismiss this proceeding based upon said objections is denied. Similarly, the motion of the defendants for relief from the Order avoiding the deed of the property from Claxton, III to Classic also is denied.

Claxton, III, the bankrupt herein, originally purchased the subject property in 1976. The sellers, Mr. and Mrs. Samuel T. Neel, took back a first deed of trust in the approximate amount of $335,000.00. Claxton, III later obtained a new first trust for $200,000.00 and the Neels then took a second trust for the unpaid balance remaining.

In December 1978, Claxton, III executed a sales contract to sell 5.3 acres of the 7.3-acre property to Classic Homes, Inc. The terms were $100,000.00 cash plus $300,000.00 under a deed of trust and note. In April 1979, apparently concerned that Claxton did not intend to convey under the contract, Classic filed suit for specific performance in Fairfax County Circuit Court. On April 20, 1979, the parties settled this suit and the Circuit Court entered a consent decree. The settlement terms, as stipulated by the parties and approved by the Circuit Court were as follows: Claxton, III could encumber the property up to a maximum of $400,000.00; Claxton, III was required to execute an escrow deed conveying to Classic the full 7.3 acres of the property, rather than only the 5.3 acres in the sales contract; in the event Claxton, III defaulted, Classic would have the right to record the escrow deed and obtain title to the entire parcel; if Classic exercised its right to record the escrow deed, it would take subject to all liens of record and assume all debts encumbering the property at that time.

During the first week of May 1979, Claxton, III placed upon the property four additional deeds of trust totalling $520,000.00. These encumbrances were as follows: a $100,000.00 deed of trust to his parents, Mr. and Mrs. Philander P. Claxton, Jr. (the "third" deed of trust), a $20,000.00 deed of trust to Edward M. Waibel (the "fourth" deed of trust), a $300,000.00 deed of trust to Allen & Co. and others (the "fifth" deed of trust); and a $100,000.00 deed of trust to Union First National Bank of Washington (the "sixth" deed of trust). Classic, upon discovering that Claxton, III had violated the terms of the consent decree by encumbering the property beyond the $400,000.00 limit, recorded its escrow deed on May 22, 1979.

During this time, Claxton, III was the chief executive officer of the Watkins Corporation ("Watkins"), of which he was also the founder. On May 10, 1979 Watkins filed a voluntary petition in bankruptcy in this Court pursuant to a resolution of the corporation's Board of Directors a few days

earlier. Edward M. Waibel ("Waibel"), holder of the fourth deed of trust, was the former president of Watkins. Allen & Co. and the other defendants herein, holders of the fifth deed of trust, were investors in Watkins and the consideration for the $300,000.00 deed of trust granted to them was the purchase by Claxton of Allen & Co.'s stock in Watkins.

In this action the Trustee in Bankruptcy is proceeding under Sections 60, 67 and 70 of the Bankruptcy Act. Section 60b gives the trustee power to avoid preferential transfers of property by a bankrupt; Section 67d gives the trustee power to avoid transfers made in fraud of creditors; and Section 70e gives the trustee power to avoid any transfer which is fraudulent under applicable state law. Under both Section 60 and Section 67, insolvency of the debtor at the time of the transfer is a threshold issue, an essential element which must be proved by the trustee in every case. (Bankruptcy Act §§ 60b, 67d and 70e.)

Under Section 1(19) of the Bankruptcy Act, a person is deemed insolvent "whenever the aggregate of his property ... shall not at a fair valuation be sufficient in amount to pay his debts." (Bankruptcy Act § 1(19).) Section 67d contains its own definition of insolvency and states that a debtor "is 'insolvent' when the present fair salable value of his property is less than the amount required to pay his debts." (Bankruptcy Act § 67d(1)(d).) These definitions are substantially similar, and any nuances which have been appended to one or the other by various courts over the years will not illuminate the issue in this case.

This Court has adjudicated Claxton, III a bankrupt. (*Matter of Claxton,* 21 B.R. 905 (Bkrtcy.E.D.Va.1982).) Adjudication alone is not conclusive of the issue of insolvency. (*Gratiot County State Bank v. Johnson,* 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587 (1919).) However, adjudication properly may be considered as evidence of insolvency. In this case, Claxton, III vigorously contested the involuntary petition, and adjudication resulted only after lengthy evidentiary hearings. Accordingly, there is little dispute

that Claxton, III was insolvent on the date the involuntary petition was filed, June 26, 1979. The issue to be determined here is whether Claxton, III was insolvent six weeks earlier, during the first week of May 1979 or, under Section 67d(2)(a), whether the transfer to the defendants rendered him insolvent.

Insolvency need not be proved by direct evidence but may, and indeed often must, be proved by other facts from which the ultimate fact of insolvency may be presumed or inferred. (*In re Entertainment Incorporated,* 375 F.Supp. 390, 394 (E.D.Va. 1974) and cases cited therein.) Where the date of the bankruptcy petition is "near" the date of the transfer and there is no evidence of changed conditions, courts have permitted the trustee to "retroject" the financial condition of the debtor to show insolvency on the date of the challenged transfer. (*Hassan v. Middlesex County National Bank,* 333 F.2d 838 (1st Cir.1964); *In re Great Western Biscuit Co.,* 85 F.Supp. 314 (S.D.Cal.1949); *In re Entertainment Incorporated, supra.*) The period of time over which retrojection has been approved ranges from a few weeks to several months. (*In re Elmira Steel Co.,* 109 F. 456, 460–61 (N.D.N.Y.1901).)

Two witnesses testified at trial on behalf of the trustee. They were Richard A. Bartl, the trustee herein, and Samuel F. Neel, who, at the time of the transfer in question, was chairman of the board of the bankrupt Watkins Corporation.

Neel testified that Claxton, III, the bankrupt herein, was a shareholder, director and also the chief operating officer of Watkins. Claxton, III had held these positions for several years until about two weeks prior to the Watkins bankruptcy when, in lieu of dismissal by the board of directors, the board permitted him to resign as an officer and director. Claxton, III's resignation occurred on or about April 30, 1979, approximately one week prior to the recording of the deed of trust securing Claxton, III's note to the defendants.

Neel testified that a major factor in the Watkins bankruptcy was the discovery by

the board, in the late winter or early spring of 1979, that Claxton, III had failed to file proper withholding tax returns or pay withholding taxes for the corporation as far back as 1977. By the time the failure to pay was discovered, these taxes amounted to approximately $1.6-million of which more than $1-million represented trust funds payable on behalf of the corporation's employees. In addition, the corporation, which operated thirteen restaurants under a franchise from the International House of Pancakes, was in default in its payments to the franchisor, to equipment lessors and to others. Claxton, III had personally guaranteed many of these defaulted loans.

Neel testified further that the corporation had transferred on its books and records one-million shares of stock belonging to Claxton, III to two brothers named Halmos. Claxton, III had placed this stock in escrow to guarantee payment of a note for $285,000.00 which he had given to settle a lawsuit. When Claxton, III defaulted, the Halmos brothers made demand and the corporation effected the transfer. The one-million shares so transferred represented in excess of 85 percent of the outstanding stock, or a controlling interest in the corporation. Neel testified further that the transfer of shares from defendants to Claxton, III pursuant to the transaction at issue in this case had not been accomplished in the records of Watkins by the time the corporation filed for bankruptcy on May 10, 1979 but, apparently, took place at a later date. In addition, investigation by the board of directors revealed that Claxton, III had removed approximately $900,000.00 from the corporation's bank accounts.

Regarding the value of stock in Watkins, Neel testified as both an owner of shares and as chairman of the board of the corporation that "the stock was absolutely worthless in May of 1979." (Tr. at 37.)

Trustee, Richard A. Bartl, testified regarding his investigation of the collectibility of the assets which Claxton, III listed in the schedules and statement of affairs filed following his adjudication. The results of this investigation were that none of the assets listed by Claxton, III were collectible or could yield any funds to the bankruptcy estate. The claimed assets to which the trustee testified consisted of an unsecured note the obligor on which could not be found and interests in various corporations and partnerships which investigation revealed to be either defunct or not generating or likely to generate any funds. Regarding one claimed asset, that of stock in Austin Molding Corporation, the trustee testified that he had determined that Claxton, III was not and had never been a stockholder but, rather, owed money to that corporation. The trustee stated that the only asset he anticipated collecting was the real property at issue herein which Claxton, III had transferred prior to the filing of the bankruptcy petition.

Claxton, III resisted the involuntary proceeding and was not adjudicated a bankrupt until March 1980. No schedules were filed until after the order of adjudication and the trustee, accordingly, was unable to undertake the investigation of the claimed assets until the summer of 1980. The trustee testified, however, that he had keyed his investigation to the time of the filing of the petition in June 1979.

The bankrupt's schedules themselves never were formally introduced or admitted into evidence in this adversary proceeding. The trustee, however, identified the documents, which had been admitted in another complaint as part of a consolidated trial [7]. Subsequently, both during the trial and in a post-trial brief, the trustee requested the Court to take judicial notice of the bankruptcy schedules. Defendants oppose the trustee's request that the Court take judi-

---

7. This adversary proceeding, Complaint No. 5 in the Claxton, III bankruptcy, was consolidated for trial with Complaints Nos. 2 and 4. All exhibits of the trustee were stipulated into evidence in Complaints Nos. 2 and 4 but not in Complaint No. 5, the proceeding herein. Fol-

lowing the direct examination of the trustee, the Court ruled that the exhibits in each Complaint would be considered separately. (Tr. at 85.) Earlier, the Court had ruled that all admitted testimony of witnesses would be admitted in all three Complaints. (Tr. at 54.)

cial notice of the bankrupt's schedules. Rule 201 of the Federal Rules of Evidence gives the trial court considerable discretion in this matter. (Fed.R.Evid. 201.) Certain case law, however, imposes restrictions on this discretion. The Third Circuit Court of Appeals has ruled that a court may not take judicial notice *sua sponte* of a bankrupt's schedules and related documents in the Court's files. (*In re Aughenbaugh,* 125 F.2d 887 (3rd Cir.1942).) The rationale of *Aughenbaugh* is that due process requires that the opposing party be apprised of what evidence is being relied on and be able to exercise his full right to cross-examine and rebut.

Defendants cite a number of other cases in which the taking of judicial notice has been disapproved because the material at issue never was introduced at the trial. *In re Phippens,* 4 B.R. 155 (Bkrtcy.M.D.Tenn. 1980); *In re Birchminster Corp. of California,* 6 B.R. 258 (Bkrtcy.E.D.Pa.1980); *In re Ratmansky,* 7 B.R. 829 (Bkrtcy.E.D.Pa. 1980); *In re Traffic Safety Co., Inc.,* 21 B.R. 669 (Bkrtcy.E.D.Pa.1982). The Court notes that, with one exception, these cases arose in a jurisdiction within the Third Circuit and that the ruling courts accordingly were bound by the *Aughenbaugh* decision. Bankruptcy courts located in other circuits, however, have taken judicial notice of their own related court records. *See, e.g. Matter of Maplewood Poultry Co.,* 2 B.R. 545 (Bkrtcy.D.Me.1980); *Matter of Harland,* 3 B.R. 597 (Bkrtcy.D.Neb.1980); *In re Ponn Realty Trust,* 4 B.R. 226 (Bkrtcy.D.Mass. 1980); *In re Hollander,* 25 B.R. 905 (Bkrtcy. W.D.Mo.1982). In appropriate cases, courts have reached beyond the bankruptcy proceedings to take judicial notice of the record in other cases involving activities of a debtor. *Meyerson v. Werner,* 683 F.2d 723 (2nd Cir.1982); *In re D.H. Overmyer Telecasting Co., Inc.,* 23 B.R. 823, 927–28 (Bkrtcy.N.D.Ohio 1982).

■ This Court is within the jurisdiction of the Fourth Circuit. There do not appear to be any decisions of the Fourth Circuit Court of Appeals dealing with the precise issue of the extent to which a bankruptcy court may exercise its discretion to take judicial notice of the bankrupt's schedules in an adversary proceeding arising within the same bankruptcy case. In addition, the Court notes that the cases cited by the defendants all involved voluntary bankruptcy petitions in which the debtor had a vested interest in demonstrating insolvency. The opposite situation is presented here. Claxton, III was the subject of an involuntary petition and consistently sought to demonstrate solvency, rather than insolvency, throughout lengthy adjudication proceedings. (*See Matter of Claxton,* 21 B.R. 905 (Bkrtcy.E.D.Va.1982).) The Court further notes that the rationale of the *Aughenbaugh* case has been satisfied here. The trustee listed the bankrupt's schedules in his pre-trial list of exhibits which was furnished to defendants' counsel in a timely manner. The schedules themselves also were furnished pursuant to this Court's pre-trial order. Accordingly, for all the foregoing reasons, the Court takes judicial notice of the schedules filed by Claxton, III in the bankruptcy case of which this proceeding is a part.

■ Credibility of witnesses as to the evidentiary facts giving rise to an inference of insolvency is always an issue and one to be resolved by the trier of fact, which in the instant case is the Court. (*In re Entertainment Incorporated,* 375 F.Supp. 390 (E.D.Va.1974).) In addition, although the trustee bears the burden of proof initially, once the trustee has adduced testimony and other evidence from which it would be reasonable to infer the requisite insolvency, the burden of going forward may shift, obliging the defendant to come forward with rebutting evidence. (*Id.* at 396.)

■ For a debtor to be insolvent under Section 67d his debts must exceed the "fair salable value of his property." (Bankruptcy Act § 67d(1)(d).) Claxton, III's property at the time of the transfer to the defendants consisted of his remaining interest in the real property at issue herein, and the assets which he later listed on the bankruptcy schedules. Among the assets listed is stock in Watkins Corporation having an alleged

value of $1,475,000.00. Neel's testimony, however, showed that the one-million shares formerly owned by Claxton, III had been transferred to the Halmos brothers. This, in addition to the fact that the purchase of 125,000 shares from the defendants had not yet been recorded on the corporation's books, resulted in Claxton, III's holdings in Watkins Corporation in early May 1979 being only minimal. In any event, considering Neel's testimony and the filing of a bankruptcy petition by the corporation within a few days of the transaction between Claxton, III and the defendants, whatever shares Claxton, III held on that date had little if any value[8]. Although there was testimony that Claxton, III had withdrawn a total of approximately $900,-000.00 in cash from Watkins, no time frame for the withdrawals was established, and there is no evidence that Claxton, III still had this money during the first week of May 1979. Regarding the other assets listed in the petition, with the exception of the real property, there is no evidence to suggest that these were any more collectible, and therefore "valuable" six weeks prior to the filing of the involuntary petition than they were when the petition was filed.

As to the value of the real property, Claxton, III listed the property in his schedules at $850,000.00. Salable or market value, however, generally is defined as being the amount a willing purchaser would pay for the property in an arms-length transaction. Here, Classic Homes recorded its escrow deed when it learned that Claxton, III had encumbered the property in a total amount of $820,000.00. Classic Homes could have abandoned the deal. The fact that it chose to take the property for the existing obligations indicates that $820,-000.00 represents the "fair salable value" of the property as contemplated by Section 67d(1)(d).

Claxton, III's liabilities on the relevant date were substantial. The deed of trust given to the defendants was a fifth trust. Prior deeds of trust amounted to a total of $420,000.00, leaving an equity in the property of $400,000.00 before the transfer to the defendants. In the bankruptcy schedules filed with this Court, Claxton, III listed undisputed debts of $347,438.70. In addition, Claxton, III faced potential liability for the unpaid withholding taxes due from Watkins and any penalties thereon. (26 U.S.C. § 6672.) Further, Claxton, III had personally guaranteed a number of the obligations of Watkins Corporation. Watkins filed its petition less than a week after the transaction between Claxton, III and the defendants. Thus, it is reasonable to infer that Watkins already was in default in its payments to these creditors triggering Claxton, III's liability on the debts. There is no evidence in this proceeding of the amounts of these liabilities. The creditors involved, however, included the corporation's franchisor, equipment lessor and its major financiers. Lastly, Claxton, III owed Watkins the $900,000.00 he had taken from the corporation.

The Court finds the testimony of Neel and the trustee regarding Claxton, III's financial condition to be fully credible. The trustee's testimony indicates insolvency on June 26, 1979. With the exception of the transactions involving the real property, there is no evidence of changed circumstances that would preclude the Court from retrojecting said insolvent condition to the first week of May 1979. Neel's testimony regarding the unpaid taxes and other liabilities of Watkins, however, demonstrates that in early May 1979 Claxton, III's debts far exceeded his $400,000.00 remaining equity in the real property. Thus retrojection is unnecessary here.

The cumulation of uncontradicted evidence on this issue is persuasive, and the Court accordingly finds that on the date of the recording of the deed of trust to the

---

**8.** Neel's testimony that the stock of Watkins was worthless is not vitiated by his admission later in the trial that he had accepted $50,-000.00 for his own shares during the summer of 1979, a few months after the Watkins and Claxton, III bankruptcies. The "insider" status of the purchaser, who was Claxton, III's father, indicates that the transaction was not at arms length.

defendants Claxton, III was insolvent or became insolvent as a result of said conveyance.

Under Section 67d(2) of the Act the trustee may avoid as fraudulent any transfer by a debtor within one year of the filing of the petition if made without fair consideration by a debtor who is or thereby becomes insolvent. (Bankruptcy Act § 67d(2).) Section 67d(1) states that consideration is "fair" if property is transferred or an antecedent debt satisfied in exchange for a "fair equivalent." (Bankruptcy Act § 67d(1)(e)(1).) If security is given, what the debtor receives must not be "disproportionately small" compared to what he gives. (Bankruptcy Act § 67d(1)(e)(2).)

In the transaction at issue here, Claxton, III exchanged a $300,000.00 interest in real property for 125,000 shares of Watkins Corporation stock. The evidence adduced indicates that at the time of the conveyance to the defendant Claxton, III had equity in the real property in the approximate amount of $400,000.00, so that the deed of trust had an actual value equal to its face amount of $300,000.00. The note and deed of trust which Claxton, III signed bear the date May 1, 1979, and the deed of trust was recorded on May 7, 1979. Watkins Corporation filed a petition for liquidation bankruptcy three days later, on May 10, 1979. The bankruptcy of Watkins and the testimony of the corporation's chairman indicate that the stock which constituted the consideration for the conveyance had a value of zero.

Thomas R. DiBenedetto ("DiBenedetto"), a former vice president of Allen & Co., one of the defendants here, testified that he believed that on May 1, 1979 Watkins was an ongoing concern and that the value of the stock was commensurate with the value of the property interest conveyed by the deed of trust. DiBenedetto, who stated that he is an investment banker experienced in bankruptcy reorganizations, was also a director of Watkins and must, therefore, be charged with knowledge of the corporation's true condition. DiBenedetto admitted that his estimate of the value of

the Watkins stock was contingent upon the success of a plan by Claxton, III to regain complete control of the corporation, refinance it, and make a deal with its creditors.

There is no evidence here of any antecedent debt of Claxton, III to defendants. Accordingly, the Watkins stock is the consideration which must meet the "fair equivalent" standard, with that flowing from one party not "disproportionately small" compared to that flowing from the other. (Bankruptcy Act §§ 67d(1)(e)(1)–(2).) In this transaction, Claxton, III conveyed away an interest having a value of $300,-000.00 in exchange for 125,000 shares of worthless stock. The Court finds, therefore, that the transaction between Claxton, III and the defendants was without fair consideration.

The transfer herein was made by Claxton, III within one year of the filing of the bankruptcy petition. The transfer occurred without fair consideration. Claxton, III was insolvent at the time of the transfer or became insolvent as a result. In these circumstances, under Section 67d(2)(a), the transfer is deemed fraudulent as to creditors existing at the time without regard to the debtor's actual intent. Accordingly, for all the foregoing reasons, the Court finds that the deed of trust made by Claxton, III to the defendants herein is null and void *ab initio* as a fraudulent transfer under Section 67d(2)(a) of the Bankruptcy Act.

 In this Complaint, the trustee is proceeding also under Sections 60 and 70 of the Bankruptcy Act. Under Section 60, the trustee may avoid as preferences certain transfers by a debtor in payment of antecedent debts. There is in this action, however, no evidence of any antecedent debt of Claxton, III to the defendants. Accordingly, the transfer was not a voidable preference under Section 60. Section 70e permits the trustee to avoid transfers which are fraudulent under applicable state law. Virginia's fraudulent conveyance statute is found in Section 55–80 of the Virginia

Code [9]. This statute, however, applies only to transfers effected "with intent to hinder, delay or defraud creditors." (1950 Code of Virginia § 55–80 (1981 Repl. vol.).) This statutory language would require the Court to make an affirmative finding of fraudulent intent on the part of the debtor. While the requisite intent may have existed, such fraud must be proved by clear, cogent and convincing evidence, and the evidence adduced does not support such a finding.

Having thus ruled, the Court finds it unnecessary to reach the additional issues raised by the parties.

An appropriate Order will enter.

---

**9.** Section 55–80 reads, in pertinent part:

Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void.