LONE STAR INDUSTRIES, INC., a Delaware corporation authorized to do business in Utah as Portland Cement Company of Utah, Plaintiff–Appellant,

v.

HORMAN FAMILY TRUST; Sidney M. Horman, as Trustee of the Horman Family Trust; Lawrence D. Williamsen; and Williamsen Investment Company, a Utah partnership, Defendants–Appellees.

No. 90–4159.

United States Court of Appeals, Tenth Circuit.

April 7, 1992.

Kent O. Roche, Salt Lake City, Utah (James B. Lee, David W. Tundermann and David W. Zimmerman of Parsons Behle & Latimer, and Glen E. Fuller, with him on the brief), for plaintiff-appellant.

Robert S. Campbell, Jr., Salt Lake City, Utah (Joann Shields of Campbell Maack & Sessions, with him on the brief), for defendants-appellees Sidney M. Horman and Horman Family Trust.

Brent V. Manning, Salt Lake City, Utah (Richard G. Wilkins and Alan C. Bradshaw of Holme Roberts & Owen, with him on the brief), for defendants-appellees Lawrence D. Williamsen and Williamsen Inv. Co.

Before HOLLOWAY, TACHA, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Lone Star Industries, Inc., a Delaware corporation authorized to do business in Utah as Portland Cement Company of Utah, brought the present action in the United States District Court for the District of Utah against the Horman Family Trust and its Trustee, Sidney M. Horman (the Hormans) and Lawrence D. Williamsen and the Williamsen Investment Company (the Williamsens) asserting a contribution claim under Section 113(f) of the Comprehensive Environmental Response, Compen-

sation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9613(f), and a cost recovery claim under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).[1] Lone Star also asserted a pendent state claim for contribution.

As will be detailed later, the district court dismissed Lone Star's complaint, and the action based thereon, upon the defendants' motions to dismiss under Fed. R.Civ.P. 12(b)(6), the district court holding that the complaint failed to state a claim upon which relief could be granted. Lone Star appeals the order of dismissal.

■ Inasmuch as the district court dismissed Lone Star's complaint on 12(b)(6) motions, Lone Star's complaint, which was actually an amended complaint, becomes all important. In resisting a 12(b)(6) motion, all well-pleaded matters in the complaint must be accepted by a district court as true and correct. In such circumstance we have elected to set forth Lone Star's amended complaint, less the formal parts thereof, as Attachment A to this opinion.

As indicated, in response to Lone Star's complaint, the Williamsens filed, *inter alia,* a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The Hormans, however, filed an answer and counterclaim. After hearing, the district court granted Williamsens' motion to dismiss under 12(b)(6). Lone Star then filed a motion to reconsider and the Hormans filed an alternative motion to dismiss under 12(b)(6) or for a judgment on the pleadings under 12(c) or for summary judgment under 56. The district court denied Lone Star's motion to reconsider and granted Hormans' motion to dismiss under 12(b)(6). Eventually all of Lone Star's claims against the Hormans and Williamsens were dismissed with prejudice under 12(b)(6) and the district court entered a

certification under Fed.R.Civ.P. 54(b). Lone Star appeals.

Lone Star's first claim for relief was based on CERCLA's cost recovery provisions as set forth in 42 U.S.C. § 9607(a), which reads as follows:

(a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in section (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

---

**1.** Congress enacted CERCLA in 1980 in response to concerns over the effect of improper disposal of hazardous waste and substances on the environment and on public health. To promote rapid cleanup, CERCLA authorized the creation of a Hazardous Waste Response Fund, popularly known as "Superfund." The Superfund provides initial clean-up funds, or reimbursement for response costs incurred in an EPA-approved cleanup, and then CERCLA provisions make responsible parties liable for all past, present,

and future clean-up costs. As originally enacted, CERCLA provided no express right of contribution. Nevertheless, courts permitted contribution claims among responsible parties, arising from the common law or implied from the language of CERCLA. Congress later created an express right of contribution in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), enacting 42 U.S.C. § 9613(f). *See generally* Developments in the Law—Toxic Waste Litigation, 99 Harv.L.Rev. 1458 (1986).

Lone Star's second claim for relief was based on CERCLA's contribution provisions as set forth in 42 U.S.C. § 9613(f)(1), which reads as follows:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal Law. *In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate* (emphasis added).

As above mentioned, Lone Star also filed a third claim based on state and common law contribution.

Paraphrasing 42 U.S.C. § 9613(f)(1), Lone Star may seek contribution from any person who is "liable or potentially liable under section 9607(a) of this title...." It would appear that both the Hormans and Williamsens are "liable or potentially liable" under section 9607(a).[2] In this regard, neither the Hormans nor the Williamsens argue that they are not "potentially responsible parties" under that section. As of this point in time, it would appear that each is the owner of land upon which there is a hazardous substance, and, under § 9607(a) they apparently could be required, in the first instance, to remedy the situation, in which event they would undoubtedly be seeking contribution from Lone Star. The last sentence in § 9613(f)(1) goes on to provide that in resolving a claim for contribution the district court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."

Based on the "equitable factors" language appearing in § 9613(f)(1), Lone Star's position is that under the circumstances of this case, so-called "equitable accountability" requires the defendants to pay for at least a part of the expense already incurred by Lone Star ($1,000,000) in connection with the waste CKD deposited by it on defendants' properties, and to thereafter share, equitably, in future expenses incurred in remedying the condition.[3]

As indicated, the district court entered several orders leading up to its final dismissal of Lone Star's complaint. In an order of May 31, 1990, the district court dismissed without prejudice Lone Star's claim against the Williamsens, the district court concluding "that there is an insufficient equitable basis to apportion response costs to the Williamsen defendants." In a second order of July 30, 1990, the district court, *inter alia*, denied Lone Star's motion to reconsider its order of May 31, 1990. In so doing the district court stated that its dismissal of Lone Star's action against the Williamsens was "based upon the absence of any allegations which would place equitable accountability upon the Williamsens...."

In its so-called Final Order and Judgment dated August 29, 1990, and entered on September 12, 1990, the district court relying on its earlier orders and a subsequent stipulation, dismissed with prejudice Lone Star's action against both the Hormans and Williamsens for failure to state a claim upon which relief could be granted. Such dismissal, however, was without prejudice to Lone Star's right to commence a second action if at a later time Lone Star was required to remedy a condition that did not originate with Lone Star or Portland Cement. The district court at that time also entered a certification under Fed.R.Civ.P. 54(b). This appeal followed.

**2.** In granting the Williamsens' motion to dismiss, the district court noted that it was undisputed that the Williamsens were the owners of a site alleged by the EPA to contain hazardous substances and were also the owners of the site at the time of the waste disposal, and accordingly were "liable or potentially liable under section 9607(a)."

**3.** After commencement of the present action, the cost of the recommended remedial action was estimated to have a present value of $12,000,000.

■ At the outset, although the Williamsens filed an alternative motion for summary judgment under Fed.R.Civ.P. 56 and the Hormans filed an alternative motion for summary judgment and for judgment on the pleadings under Fed.R.Civ.P. 12(c), all agree that the district court dismissed Lone Star's amended complaint under Fed. R.Civ.P. 12(b)(6), i.e., Lone Star's failure to state a claim upon which relief could be granted. That is why the amended complaint, and the contents thereof, become important.

Further, the parties agree as to the general principles to be followed where a 12(b)(6) motion challenges the sufficiency of a complaint. In this regard, the Fifth Circuit in *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir.1988), a CERCLA case, spoke as follows:

> When a motion to dismiss challenges both the court's jurisdiction, 12(b)(1), and the existence of a federal cause of action, 12(b)(6), the *Bell v. Hood*[1] standard is applied and the motion is treated "as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.1981). In reviewing such a 12(b)(6) motion, we accept as true all well-pled allegations, resolving all doubts in favor of the complainants. Such a motion will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss for failure to state a claim "is viewed with disfavor, and is rarely granted." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir.1981).

1  327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

In this court, Lone Star initially argues that its claim for "equitable accountability" by the defendants for a share of the expense attendant to "cleaning up" the defendants' property is a statement of "ultimate fact," as opposed to a "legal conclusion," and is of itself sufficient to defeat a 12(b)(6) motion. Alternatively, Lone Star argues that should its mere allegation of "equitable accountability" be deemed insufficient, it nonetheless did allege "ample facts to underpin a finding of equitable accountability on the part of the defendants." We decline to be drawn into a semantical dispute as to whether a request for an equitable accounting is an allegation of ultimate fact or a legal conclusion and prefer to consider the amended complaint in its entirety. Viewed in its entirety, we believe the amended complaint sets forth sufficient matter to withstand a 12(b)(6) motion.

Lone Star's amended complaint was filed November 2, 1989. From paragraph 10 of the amended complaint we learned that from 1964 to 1974 Portland Cement deposited waste CKD on property owned by the Williamsens with the latter's consent. It would appear that the Williamsens were not just doing a favor for Portland Cement, as they needed fill material for their property and believed that the waste CKD would be acceptable fill material and no doubt would enhance the value of their property.

From paragraph 9 of the amended complaint we learn that in 1974, when Portland Cement stopped depositing waste CKD on the Williamsens' properties, Lone Star began depositing waste CKD on the Hormans' property and continued to do so until December, 1983, when it ceased doing so.[4] Lone Star further alleged in paragraph 9 that the waste CKD was placed on the Hormans' property with their consent and at no cost to the Hormans because they, took needed fill material for their property and believed that the waste CKD would be acceptable fill material and, we note, would

4.  The Hormans and the Williamsens owned adjoining parcels of land located in Salt Lake County, Utah, which were in proximity to the Portland Cement plant. By 1974 the Williamsens apparently had all the waste CKD they needed as fill, at which time Portland Cement began depositing waste CKD on the Hormans' property and did so until December, 1983. Counsel suggests that such indicates that the Hormans and the Williamsens determined how much of the waste CKD they desired and where it should be placed.

presumably enhance the value of their property.

From paragraph 12 of the amended complaint we learn that neither Portland Cement nor Lone Star knew or had reason to know that its waste CKD was potentially hazardous to public health or the environment and that neither made any express or implied representations to either the Williamsens or the Hormans as to the suitability of waste CKD as fill material.

From paragraph 16 we learn that the Environmental Protection Agency on July 26, 1989, issued a formal notice to Lone Star, the Hormans and the Williamsens, advising all three that each was a "potentially responsible party" under CERCLA and, as such, each was potentially liable for response costs incurred in connection with remedial action at the site.

In paragraph 18 the Hormans and the Williamsens are described as the present owners of a "facility" from which both the EPA and the Utah Department of Health had alleged there was an actual or threatened release of hazardous substances.

In paragraph 23 of the amended complaint, Lone Star alleges that it would be inequitable for it to bear all of the cost of responding to the threatened release of hazardous substances from properties owned by the Hormans and the Williamsens because of the following reasons, among others: (1) Portland Cement and Lone Star did not know, nor did they have reason to know, that the waste CKD delivered to and accepted by the Hormans and Williamsens would be potentially hazardous to public health and environment; (2) neither Portland Cement nor Lone Star made any warranties that the waste CKD was suitable fill material; (3) Portland and Lone Star received no monetary compensation for the waste CKD; (4) by accepting the waste CKD the Hormans and the Williamsens became the "owners" thereof and "accepted responsibility" therefor; and (5) the Hormans and Williamsens would be "unjustly enriched" if Lone Star were required to bear all the expense incurred in cleaning up properties owned by them.

As indicated, the only issue in the present appeal is whether the amended complaint is sufficient to withstand a 12(b)(6) motion. We are not now concerned with whether Lone Star will ultimately prevail, or fail, on its claim for equitable contribution by the defendants. The district court was apparently persuaded by the admitted fact that the defendants neither knew nor had reason to know of the potentially hazardous nature of waste CKD nor had they expressly agreed to hold Portland Cement harmless from any future liability caused by the waste CKD. Those are of course matters to be considered, but we do not believe that either is dispositive of Lone Star's claim. The state of mind of the parties as to the nature of the waste CKD and whether the parties regarded it either as harmless or as potentially hazardous would be among the equitable factors to be considered. Equitable factors, however, need not necessarily entail actual knowledge. The Williamsens, for example, presumably had the benefit of the waste CKD for some ten to twenty years before the present controversy had its genesis in 1984. It is a fair inference that both defendants were of the view that they were enhancing the value of their respective properties by using the waste CKD as fill material at no cost to either.

Our attention has not been drawn to any reported decision of a district court dismissing a CERCLA claim for contribution on a 12(b)(6) motion based on an alleged failure to sufficiently identify and list in the complaint the "equitable factors" which, under 42 U.S.C. § 9613(f)(1), would warrant contribution. Nor has our attention been directed to any reported decision of an appellate court reviewing such action by a district court. In *Tanglewood, supra,* a CERCLA case, the district court denied the defendants' 12(b)(6) motion and on interlocutory appeal, that action was affirmed. However, in *Tanglewood* the 12(b)(6) motion was based on a belief that the defendants then were not "covered persons" under *CERCLA.*

■ Under the general rules applicable to "notice" pleading, applied in *Tangle-*

*wood*, we believe that Lone Star alleged enough facts to withstand a 12(b)(6) motion. A complaint must contain a short and plain statement sufficient to give the defendant fair notice of what the claim is and the grounds on which it rests. Fed.R.Civ.P. (8)(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). *See generally* 2A Moore's Federal Practice ¶ 8.13 at 8–57 to 8–84 (2d ed. 1991). In its claim for contribution, Lone Star alleged that it would be "inequitable" for it to bear all response costs and enumerated seven specific equitable factors in addition to the general allegations set forth in the complaint. Construing all allegations as true, as Rule 12(b)(6) requires, and making all reasonable inferences therefrom in favor of Lone Star, we hold that the district court erred in dismissing Lone Star's amended complaint.

Judgment reversed.

## ATTACHMENT A

\* \* \* \* \* \*

## GENERAL ALLEGATIONS

8. From its incorporation in Utah in June 1958 through approximately August 1982, Portland Cement Company of Utah ("Portland Cement") operated a cement manufacturing plant located in Salt Lake County at 615 West 800 South. In 1979 Lone Star acquired all of the stock of Portland Cement. In approximately August 1982 Lone Star acquired the plant from Portland Cement and thereafter continued its operation. As part of this same transaction, Lone Star acquired the right to continue to operate the plant under the assumed name of Portland Cement and assumed the rights and liabilities associated with the plant. A by-product of the cement manufacturing process conducted by Lone Star and Portland Cement was waste cement kiln dust ("waste CKD").

9. For a number of years, commencing approximately April 1974 and ending approximately December 1983, Portland Cement and/or Lone Star deposited waste CKD on property owned by Horman. The Horman property at issue in this action is located in Salt Lake County at approximately 1000 South Redwood Road and is described more particularly on Exhibit "A" hereto as Sites 2 and 3. The waste CKD was deposited on the Horman property with the permission of Horman and at no cost to Horman. Horman allowed the waste CKD to be deposited on his property because he needed fill material and because he believed that the waste CKD would be acceptable fill material.

10. For a number of years, commencing approximately 1964 and ending approximately April 1974, Portland Cement also deposited waste CKD on property owned by Williamsen. The Williamsen property at issue in this action is located in Salt Lake County and is situated immediately to the west of the Horman property described above. The Williamsen property is described more particularly on Exhibit "A" hereto as the West Site. The waste CKD was deposited on the Williamsen property with the permission of Williamsen and at no cost to Williamsen. Williamsen allowed the waste CKD to be deposited on his property because he needed fill material and because he believed that the CKD would be acceptable fill material.

11. On information and belief, Lone Star alleges that Horman and Williamsen brought in other materials or debris for use as fill materials at the subject properties and also allowed third parties to dump other materials or debris at the subject properties. These other materials or debris have been mixed by the property owners or third parties with the waste CKD deposited at the subject properties by Portland Cement and/or Lone Star and may have included certain hazardous wastes.

12. At the time Portland Cement and/or Lone Star offered and Horman and Williamsen accepted the waste CKD as fill material, and at all times when waste CKD was delivered to Horman and Williamsen, Portland Cement and Lone Star did not know and did not have reason to know that the waste CKD was allegedly hazardous to public health or the environment. In addition, Portland Cement and Lone Star made no express or implied representations or

warranties to Horman or Williamsen as to the suitability of waste CKD as fill material.

13. In approximately September 1984, after the last waste CKD was deposited on either the Horman property or the Williamsen property, the Utah State Department of Health ("Department of Health") and the United States Environmental Protection Agency ("EPA") purportedly determined that the waste CKD may pose a threat to public health and the environment and proposed that the Horman disposal sites be included on the National Priorities List ("NPL") (commonly known as the Superfund List) promulgated pursuant to CERCLA. On June 10, 1986, the Site, which then consisted of the Williamsen disposal site as well as the Horman disposal sites, was included on the NPL.

14. On or about November 21, 1985, the Department of Health commenced an action against Lone Star in the Third Judicial District Court of Salt Lake County, State of Utah (Civil No. C–85–7880), alleging, among other things, that Lone Star was responsible for conducting an investigation of the nature and extent of any contamination at the Site and for designing and implementing a remedial program to clean up or contain any contamination so as to prevent the release of any hazardous substances into the environment. Without admitting liability, Lone Star stipulated to the entry of a Partial Consent Decree in that action. The Partial Consent Decree, initially entered on November 29, 1985, and later amended on February 13, 1989, required Lone Star to perform a Remedial Investigation/Feasibility Study ("RI/FS") with respect to the Site.

15. Lone Star has completed the required RI/FS at a cost to it in excess of $1,000,000. Lone Star is currently awaiting a final decision from the Department of Health and/or the EPA with respect to the remedial action that will be required by these agencies.

16. On or about July 26, 1989, the EPA issued formal written notices to Lone Star, Horman, and Williamsen, stating that it had determined that each of these parties was a potentially responsible party under CERCLA and, as such, was potentially liable for the response costs incurred in connection with the Site.

## FIRST CAUSE OF ACTION

### (CERCLA Cost Recovery)

17. Lone Star realleges and incorporates by reference the allegations contained in paragraphs 1 through 16 of this Complaint.

18. Horman and Williamsen are both "owners" of a "facility" from which EPA and the Department of Health have alleged there has been an actual or threatened "release" of a "hazardous substance" within the meaning of CERCLA section 107(a) (42 U.S.C. § 9607(a)).

19. As a result of the alleged release and the Partial Consent Decree, Lone Star has incurred and may continue to incur "necessary costs of response ... consistent with the national contingency plan" within the meaning of CERCLA section 107(a).

20. Lone Star is entitled to recover certain of these costs from Horman and Williamsen pursuant to CERCLA section 107(a).

WHEREFORE, Lone Star prays for Judgment against Horman and Williamsen as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

### (CERCLA Contribution)

21. Lone Star realleges and incorporates by reference the allegations contained in paragraphs 1 through 20 of this Complaint.

22. By virtue of the Partial Consent Decree, Lone Star, without admitting liability, resolved its liability to the State of Utah for some or all of the response costs associated with the Horman and Williamsen properties.

23. It would be inequitable for Lone Star to bear all the costs of responding to the alleged releases or threatened releases at the Horman and Williamsen properties for the following reasons, among others:

(1) Portland Cement and Lone Star did not know and had no reason to know that the waste CKD delivered to and accepted by Horman and Williamsen allegedly was hazardous to public health and the environment; (2) Portland Cement and Lone Star did not expressly or impliedly warrant that the waste CKD was suitable as fill material; (3) Portland Cement and Lone Star received no monetary compensation for the waste CKD; (4) Horman and Williamsen, by accepting and becoming the owners of the waste CKD, accepted responsibility for the waste CKD; (5) Horman and Williamsen brought in other materials or debris for use as fill material at the subject properties and also allowed third parties to dump other materials or debris at the subject properties; (6) these other materials or debris have been mixed with the waste CKD and may have included certain hazardous wastes; and (7) Horman and Williamsen would be unjustly enriched if Lone Star were required to bear all response costs associated with the subject properties.

24. Lone Star is entitled to contribution from Horman and Williamsen pursuant to section 113(f) of CERCLA (42 U.S.C. § 9613(f)) for any response costs it has incurred or may incur in excess of its equitable share of such expenses, costs, and fees.

WHEREFORE, Lone Star prays for judgment against Horman and Williamsen as hereinafter set forth.

### THIRD CLAIM FOR RELIEF

(State and Common Law Contribution)

25. Lone Star realleges and incorporates by reference the allegations contained in paragraphs 1 through 24 of this Complaint.

26. Lone Star is entitled to contribution from Horman and Williamsen pursuant to statutory and/or common law provisions for any amounts incurred or to be incurred by Lone Star to respond to alleged releases of hazardous substances at the Horman and Williamsen properties in excess of its equitable share of such amounts.

27. Lone Star further contends that Horman and Williamsen are required by law to reimburse and hold it harmless for its expenses, costs of suit, legal fees, and other costs which are in excess of its pro rata share thereof.

WHEREFORE, Lone Star prays for judgment against Horman and Williamsen as hereinafter set forth.

### PRAYER FOR RELIEF

WHEREFORE, Lone Star prays for relief and demands judgment against Horman and Williamsen as follows:

1. On all Claims For Relief, for declaratory judgment that Horman and Williamsen are liable to Lone Star for any response costs (including without limitation reasonable attorneys' fees and prejudgment interest) Lone Star has incurred or may incur in excess of its equitable share of such costs as a result of the alleged release or threatened release of hazardous substances at the Horman and Williamsen disposal sites;

2. On all Claims for Relief, for damages representing any response costs (including without limitation reasonable attorney's fees and prejudgment interest) Lone Star has incurred or may incur in excess of its equitable share of such costs as a result of the alleged release or threatened release of hazardous substances at the Horman and Williamsen disposal sites;

3. For its costs and attorneys' fees incurred herein; and

4. For such other and further relief as the Court deems just and proper.