**EQUIMED, INC., a Delaware Corporation, Plaintiff,**

v.

**Arla GENSTLER, M.D., Defendant.**

**No. 96–4046–RDR.**

United States District Court, D. Kansas.

Dec. 23, 1996.

Jeffery A. Jordan, Foulston & Siefkin, Wichita, KS, James L. Grimes, Jr., Foulston & Siefkin, Topeka, KS, and James P. Kimmel, Jr., Marcy L. Colkitt & Associates, P.C., Wilmington, DE, for EquiMed Inc. and Douglas R. Colkitt, M.D.

W. Robert Alderson, Darin M. Conklin, Alderson, Alderson & Montgomery; Pedro L. Irigonegaray, Irigonegaray & Associates, Topeka, KS, and R. Alan Jones, R.A.J. Limited, Las Vegas, NV, for Arla Genstler, M.D.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is presently before the court upon the following motions: defendant's motions to dismiss; plaintiff's motion for partial summary judgment and permanent injunction; and plaintiff's motion to dismiss counterclaims. The court has heard oral argument on these motions and is now prepared to rule.[1]

---

**1.** Following oral argument, plaintiff filed an amended complaint. Defendant responded with an answer that contained several counterclaims. The counterclaims were identical to those asserted in a prior answer which are the subject of the plaintiff's motion to dismiss. Plaintiff then filed another motion to dismiss. The recent motion to dismiss simply incorporates the arguments contained in the prior motion. The court shall rule upon the most recent motion and deny the prior motion as moot.

The court is familiar with the background of this case since we have previously ruled on the plaintiff's motion for preliminary injunction. Before discussing the motions filed by the parties, the court shall provide a brief factual background. In 1994, EquiMed, Inc., which was operating as EquiVision, Inc. at that time, purchased the assets of Dr. Bradford Prokop's ophthalmology practice in Topeka, Kansas. As part of the transaction, Center for Sight of Topeka (CST), P.A., a professional corporation organized and existing under the laws of the State of Kansas, was formed. Dr. Prokop was the CST's sole shareholder. Dr. Prokop became an employee of CST and entered into a services agreement with EquiMed. The services agreement provided that EquiMed would act as the exclusive business manager for CST and would provide the office facilities, supplies, equipment and personnel necessary to operate an ophthalmology practice. The services agreement provided that EquiMed would be paid $10,000 per month plus certain expenses for the management services. As security for payment of the management fees, CST granted EquiMed a security interest in all account receivables, inventory, equipment, machines, tools, fixtures, furnishings, leasehold improvements, furniture, accounts, contracts, contract rights, chattel paper and intangibles including the books and records, notes, instruments, licenses and trade names of the corporation. The services agreement provided that upon expiration or termination of the agreement, CST was required to assign to EquiMed or its designee all of the CST's contract rights, its rights to the business records, patient lists, referring physician and other records, and all other business and financial records.

Dr. Arla Genstler accepted employment with CST in 1994. In March 1995, Dr. Prokop decided to retire from the practice of ophthalmology. During that month, Dr. Prokop transferred his interest in CST to Dr. Genstler for $1.00. Thereafter, Dr. Prokop resigned from his position as officer and director of CST on March 31, 1995. Dr. Genstler became the sole director of the CST. EquiMed continued to provide services to the CST under the services agreement.

In the months following her acquisition of the CST, Dr. Genstler became dissatisfied with the performance of EquiMed. She was concerned about staffing, equipment and billing, among other things. In addition, she believed that her compensation was inadequate.

In February 1996, Dr. Genstler sent a letter to EquiMed terminating the services agreement effective no later than March 25, 1996. EquiMed responded with the following letter on March 13, 1996:

> EquiMed, Inc. hereby accepts your formal notice of termination of the Services Agreement dated as of April 1, 1994 between Center for Sight of Topeka, P.A. ("Eye Center") and EquiMed, Inc. (successor to EquiVision, Inc.), to be effective as of Monday, March 25, 1996. EquiMed, Inc. denies that it has breached the Services Agreement, and you have been unable to provide us with any specific instances where EquiMed has breached the Services Agreement. However, rather than debating these issues further, we believe that it is best that we accept your termination of the Services Agreement.
>
> We would like to remind you of Eye Center's continuing obligations under the Services Agreement including the obligations under Section 13.3 and Section 14 of the Services Agreement.
>
> Effective as of March 25, 1996, neither Eye Center nor you will have any access to the premises located at 920 Washburn Avenue. Also, upon termination of the Services Agreement, EquiMed will be entitled to retain the accounts receivable and the books and records of the practice, except to the extent that Section 13.3 provides that you may have reasonable access to the relevant medical records of all of your then current patients.
>
> Our employee, Jan McEwen, will be working with you to assist in the winddown process.

On Friday, March 15th, after the close of business, Dr. Genstler had the locks changed on the offices of CST. Over the weekend, she gathered all of the patient records and patient lists at CST and had them transport-

ed to another location. She also used the services of a former employee to gain access to an EquiMed computer. She obtained billing information from that computer and took it with her. She also took managed care contracts and her own personal computer from the site. She stored all of the records in a building at a local hospice. She had the local telephone company send all of CST's telephone calls to an answering service. She also mailed letters to over fifty insurance companies directing them to send payments for the patients of CST to her, not to the offices of CST.

On Monday, March 18th, Dr. Genstler showed up at the offices of the CST. She subsequently learned that she was no longer welcome due to her activities over the weekend.

On or about March 18th, EquiMed arranged for Dr. Michael Feifarek, a board certified ophthalmologist with the Center for Sight of Northeast Kansas, to begin seeing CST patients. He saw several of Dr. Genstler's patients who had problems.

This action was filed on March 19, 1996. There were two plaintiffs in the original complaint: EquiMed and Dr. Douglas R. Colkitt, who was identified as the Chairman of the Board of EquiMed. These plaintiffs sought declaratory and injunctive relief as well as damages for actions taken by Dr. Genstler during the months of February and March 1996. Plaintiffs filed an amended complaint on March 21, 1996. In the amended complaint, plaintiffs added several causes of action for damages. On April 9, 1996, Dr. Colkitt voluntarily dismissed his claims against the defendant without prejudice pursuant to Fed.R.Civ.P. 41(a)(1).

On March 25, 1996, CST filed an action in state court against Dr. Genstler seeking equitable relief and damages for breach of her employment contract with CST and for interfering with its business and converting its former property. This lawsuit remains pending.

On April 16, 1996, this court granted EquiMed's motion for preliminary injunction. The court enjoined Dr. Genstler from (1) denying EquiMed or its representative access to the books, medical records, financial documents or other records of CST and (2) notifying any insurance carriers or other governmental agencies, including Medicare and Medicaid, to assign or otherwise transfer payments to Dr. Genstler or to anyone other than CST. The court also ordered that all property of CST would remain in the possession of EquiMed or its designee pending resolution of this action.

## DEFENDANT'S MOTION TO DISMISS

■ The defendant contends that this action must be dismissed for plaintiff's failure to join and maintain indispensable parties. The defendant argues that this action must be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) for plaintiff's failure to join CST and to maintain Dr. Colkitt as a party. The defendant contends that both parties are indispensable under Fed.R.Civ.P. 19. Plaintiff counters that neither of these parties are necessary for this court to accord "complete relief" to the parties in this action, and that the absence of these parties will neither impair their ability to protect their interests nor subject them to inconsistent judgments.

Recently, in *Rishell v. Jane Phillips Episcopal Memorial Medical Center,* 94 F.3d 1407, 1411–12 (10th Cir.1996), the Tenth Circuit succinctly stated the rules for application of Rule 19 on the joinder of necessary and indispensable parties:

The standards set out in Rule 19 for assessing whether an absent party is indispensable are to be applied "in a practical and pragmatic but equitable manner." *Francis Oil & Gas, Inc. v. Exxon Corp.,* 661 F.2d 873, 878 (10th Cir.1981). *See also Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 106–07, 88 S.Ct. 733, 736–37, 19 L.Ed.2d 936 (1968). "The moving party has the burden of persuasion in arguing for dismissal." *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990).

Determining whether an absent party is indispensable requires a two-part analysis. *See id.; Francis Oil & Gas,* 661 F.2d at 877–78. The court must first determine under Rule 19(a) whether the party is necessary to the suit and must therefore be joined if joinder is feasible. If the absent

party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable. If so, the suit must be dismissed.

. . . . .

Rule 19(a) requires assessment of three factors. The court must consider (1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations.

. . . . .

Determining whether an absent party is indispensable requires a court to consider:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

The defendant contends that the ownership of CST is a critical issue in this case and that CST and Dr. Colkitt must be joined to determine it. This argument is based upon assertions that Dr. Genstler is the sole shareholder of CST, that she did not transfer any interest in CST to Dr. Colkitt, and that therefore she had the authority to take the actions that she took during the weekend of March 16, 1996.

In evaluating the standards set forth in Rule 19(a) as interpreted in *Rishell,* the court must conclude that neither CST nor Dr. Colkitt must be joined to this litigation. The various tort claims asserted by the plaintiff do not require the addition of either CST or Dr. Colkitt. The relief sought by plaintiff can be accorded without the addition of either of these parties. The relief sought by plaintiff in this action is (1) an equitable order directing the defendant to return the property to EquiMed and to cease interfering with EquiMed and the property; and (2) compensatory and punitive damages against the defendant for conversion, trespass and interference with contract. This relief can be provided without the addition of CST or Dr. Colkitt. *See, e.g., Ferme Rimouski, Inc. v. Limousin West, Inc.,* 620 F.Supp. 552, 555–56 (D.Colo.1985) (party with security interest to property was not indispensable party in conversion action brought by partner against other partners concerning the property). The basis of the defendant's arguments concerns affirmative defenses she seeks to raise in this case. The assertion of affirmative defenses which may turn upon, and even require adjudication of, the actions or rights of non-parties does not require joinder of those parties. *See Greenwood v. McDonough Power Equipment, Inc.,* 437 F.Supp. 707, 710 (D.Kan.1977).

Moreover, the court does not find that the absence of CST or Dr. Colkitt will in any way impair or impede their ability to protect their interests. Whatever interest CST or Dr. Colkitt may have in this litigation, the court is satisfied that these parties will be adequately represented by the present parties. *See Rishell,* 94 F.3d at 1411–12 (joinder of absent party not necessary if interests are adequately represented by parties present). Dr. Colkitt has indicated in an affidavit that he is satisfied that EquiMed will adequately represent his interests in his absence. He also further advised EquiMed that, as the sole shareholder, director and officer of CST, he is satisfied that EquiMed will adequately represent its interests to the extent that CST has any interest in this litigation. In addition, even if the defendant is correct that it is she, not Dr. Colkitt, who owns and controls CST, the court is satisfied that she will adequately represent the interests of CST. Her counsel has suggested to the court in other pleadings that her interests and CST's are identical. Accordingly, the court is not persuaded that the defendant has demonstrated that CST and Dr. Colkitt are necessary parties.

Finally, with respect to Rule 19(a)(2)(ii), the court is not persuaded at this point that there is a risk of inconsistent verdicts or judgment among those already parties to this case. The court finds no basis for defendant's fear of inconsistent judgment between the federal and state actions. *See, e.g., Air Exec, Inc. v. Two Jacks, Inc.*, 584 F.2d 942, 945 (10th Cir.1978) (in conversion action, security interest of third party was not inconsistent obligation since converter of property may not assert third party's interest). As pointed out by the plaintiff, both the plaintiffs and the claims in those actions are different. The court believes that the two cases can proceed simultaneously and that either court can consider the defenses of res judicata or collateral estoppel if and when they become applicable. In sum, the court does not find that CST or Dr. Colkitt are necessary parties under Rule 19(a). Therefore, the court need not consider the requirements of Rule 19(b).

## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

Plaintiff seeks to dismiss the following counterclaims filed by the defendant: (1) declaratory judgment that the services agreement between EquiMed and CST is illegal and void (Count I); (2) an accounting of revenue and profits attributable to CST (Count II); (3) breach of employment agreement between CST and defendant (Count III); (4) intentional interference with the employment agreement between CST and defendant (Count IV); (5) defamation (Count V); (6) intentional infliction of emotional distress (Count VI); and (7) fraud (Count IX) [2].

Plaintiff argues that the first three counts must be dismissed because they all seek relief and involve a third party—CST. Plaintiff notes that the defendant is not a party to the contract between EquiMed and CST and, therefore, she cannot prosecute the first two claims. Plaintiff also contends that the first claim must fail because plaintiff cannot show that the services agreement violates Kansas law. As to the third, plaintiff contends that defendant has failed to state a breach of

contract claim because plaintiff was not a party to that agreement.

As to the remaining counts, plaintiff argues that defendant has failed to state claims upon which relief can be granted. Plaintiff suggests that the defendant has failed to state a cause of action for tortious interference because she (1) has not pled that she had a valid employment contract at the time that plaintiff allegedly interfered with its terms; (2) has not pled that the employment agreement was breached; and (3) has not pled that EquiMed lacked justification for allegedly interfering with the employment agreement. Plaintiff further argues that the defendant has not pled that EquiMed caused CST to breach the employment agreement. Plaintiff also argues that defendant has failed to state a claim for defamation because she (1) has not alleged that the defamatory statements were false; and (2) has failed to allege how the statements were injurious to her reputation. Plaintiff further contends that it had qualified privilege based upon the circumstances to communicate the information that was transmitted.

As to the claim for intentional infliction of emotional distress, plaintiff argues that defendant has not pled any physical manifestation of emotional distress or that plaintiff's conduct was sufficiently outrageous. Finally, plaintiff argues that defendant has not stated a claim for fraud. Her claims of fraud are based upon the fact that when she purchased the stock of CST from Dr. Prokop, (1) EquiMed failed to disclose that Dr. Prokop had already given an option to purchase that stock to Dr. Colkitt and that she would have no control of CST, and (2) EquiMed told her untrue statements about "her opportunity to own and operate her own practice and develop for her own benefit the growth and profits therefrom." As to the first allegation, plaintiff asserts that it was under no obligation to communicate any information to the defendant because it was not party to that transaction. As to the second allegation, plaintiff alleges that this allegation fails to state a claim for fraud under Kansas law because it is a statement or promise concerning a fu-

**2.** In her original answer, defendant misnumbered her last counterclaim as Count XI. In her most recent answer, she properly labeled this claim as Count VII.

ture occurrence, not a pre-existing or present fact.

■ The court agrees with the plaintiff concerning the first two counterclaims. These claims must be dismissed because the defendant is not the real party in interest. In the first claim, defendant seeks a declaratory judgment invalidating the services agreement between EquiMed and CST. Since she is not a party to that agreement, she is not the real party in interest and she cannot seek invalidation of the contract. In the second claim, defendant seeks an accounting for CST. Again, the defendant is not the real party in interest to assert such a claim since she seeks an accounting on behalf of CST.

The court next turns to those claims in which plaintiff contends that defendant has failed to state a claim. The standard for dismissal on a Federal Rule of Civil Procedure 12(b)(6) motion is well-established: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept as true all well-pleaded allegations and must draw all reasonable inferences in favor of the pleader. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). A motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted. *Lone Star Industries, Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir.1992).

■ In the third claim, defendant seeks relief for breach of the employment contract defendant entered into with CST. Since CST is not a party to this action, and plaintiff is not a party to the employment contract, this claim must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff cannot be liable for breach of this contract since it was not a party to the agreement. *See Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887, 891 (1984).

While the remaining claims asserted by the defendant as counterclaims are not models of clarity or precision, they are adequate under the general rules of "notice" pleading to avoid a motion to dismiss for failure to state a claim. After drawing all reasonable inferences in favor of the defendant, we find that each claim alleges enough facts to withstand a 12(b)(6) motion. Many of the arguments raised by the plaintiff would more appropriately be raised in a motion for summary judgment.

In sum, the court shall grant the plaintiff's motion to dismiss in part and deny it in part. The court shall dismiss the first three claims. The court shall deny the remainder of the motion.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Plaintiff seeks partial summary judgment on the issue of the ownership of all records and contract rights. Plaintiff asserts that, upon termination of the services agreement, all of the assets became the property of Center for Sight of Northeast Kansas, P.A. by designation of plaintiff. Plaintiff relies upon section 13.3 of the services agreement which provides that upon the termination of the services agreement for any reason, all contract rights and all other records are "without further action" automatically assigned to plaintiff or its designees, and CST and Dr. Genstler "shall not be entitled to copies of such records." Plaintiff further argues that the services agreement is valid as a matter of law. In this regard, plaintiff argues that the services agreement is valid and enforceable as a matter of Kansas contract law and Kansas public policy. Specifically, plaintiff contends that the services agreement does not violate the public policy prohibition against the corporate practice of medicine.

The defendant has countered that the motion is not ripe because the issue of ownership of CST has not been ruled on by the state court, and this court has not ruled on her motion to dismiss. She further argues that the motion should be denied because it does not comply with Local Rules of this court. Finally, she contends that the motion

should be denied because there are disputed issues of fact.

The court has carefully considered the motion filed by the plaintiff and has determined that it would be unwise to overlook plaintiff's failure to comply with the Local Rules concerning the presentation of motions for summary judgment. The required procedures for summary judgment motions in the District of Kansas are set forth in D.Kan. Rule 56.1. Under that rule, a memorandum in support of a summary judgment motion must contain a concise statement of uncontroverted material facts set forth in separately numbered paragraphs. D.Kan. Rule 56.1. The motion filed by the plaintiff fails to comply with the requirements of Rule 56.1. The court believes that a motion in compliance with these rules will provide a more orderly mechanism for resolving the issues raised by the plaintiff. Moreover, this procedure will allow the defendant a full opportunity to respond to plaintiff's arguments concerning the validity and legality of the services agreement. Accordingly, plaintiff's motion for partial summary judgment shall be denied at this time. Plaintiff may file another motion which properly complies with D.Kan. Rule 56.1.

**IT IS THEREFORE ORDERED** that plaintiff's motion for partial summary judgment and permanent injunction (Doc. # 42) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss (Doc. # 55) be hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss counterclaims (Doc. # 120) be hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss counterclaims (Doc. # 69) be hereby denied as moot.

**IT IS SO ORDERED.**